# UNITED STATES *v.* SMITH.

NO. 20.

Argued December 4, 1951.—Decided January 7, 1952.

*Robert S. Erdahl* argued the cause for the United States. With him on the briefs were *Solicitor General Perlman* and *Assistant Attorney General McInerney.* Also with them were *John R. Benney* on a brief in both cases and *John R. Wilkins* on a brief in No. 162.

*Bernard Margolius,* acting under appointment by the Court, argued the cause and filed a brief for appellee in No. 162.

No appearance for appellee in No. 20.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Appellee Smith (No. 20) was indicted October 2, 1950, for having on or about July 1, 1947, forged the name of the payee on a check drawn on the Treasurer of the United States.

Appellee Dailey (No. 162) was indicted September 29, 1950, for having on or about March 14, 1947, knowingly made a false statement in connection with his application for Farmers Home Administration services.

In each case the crime charged was committed more than three years before the indictment was returned and therefore would be barred by the three-year statute of limitations (18 U. S. C. § 3282), unless that statute has been tolled. The prosecution argued that it was tolled by the Wartime Suspension of Limitations Act of 1942, as amended, 18 U. S. C. (1946 ed.) § 590a. The District Court in each case disagreed with the prosecution and dismissed the indictment. The cases are here on appeal. 18 U. S. C. § 3731.

The Act derives from the Act of August 24, 1942, which suspended the running of the statute of limitations applicable to offenses involving frauds against the United States until June 30, 1945, or until such earlier time as the Congress by concurrent resolution, or the President, may designate. 56 Stat. 747. That Act was amended by the Contract Settlement Act of 1944, 58 Stat. 649, 667, to provide among other things that the term of suspension of the statute of limitations was "until three years after the termination of hostilities in the present war as proclaimed by the President or by a concurrent resolution of the two Houses of Congress." Offenses in connection with the negotiation, award, termination, or settlement of contracts were included by that Act. And offenses in connection with the care, handling, and disposal of property were added by the Surplus Property Act of 1944. 58 Stat. 765, 781. At the time of the alleged offenses the Act read in relevant part: [1]

"The running of any existing statute of limitations applicable to any offense against the laws of the

---

[1] The Act of June 25, 1948, 62 Stat. 683, which revised the Criminal Code, repealed the Suspension Act (id., 862, 868) and, with a

United States (1) involving defrauding or attempts to defraud the United States or any agency thereof whether by conspiracy or not, and in any manner, . . . shall be suspended until three years after the termination of hostilities in the present war as proclaimed by the President or by a concurrent resolution of the two Houses of Congress."

The hostilities of World War II[5] were declared terminated December 31, 1946, by Presidential Proclamation No. 2714, 61 Stat. (Pt. 2) 1048-1049; 12 Fed. Reg. 1. It is therefore clear that if the designated offenses were committed within the three-year period prior to the date of the Act or between the date of the Act and December 31, 1946, the statute of limitations would be suspended. The question is whether the Act is likewise applicable to offenses committed after December 31, 1946, the date of the proclamation of termination of hostilities.

The argument of the prosecution is that the language of the Act makes no distinction between offenses committed before and offenses committed after the termination of hostilities, the emphasis of the Act being on the suspension of the "running" of the statutes of limitations. It is contended that the extension of the Act to offenses prescribed by the Contract Settlement Act and the Surplus Property Act—offenses of the type likely to

---

few changes in wording, reenacted it. *Id.*, 828, 18 U. S. C. § 3287. Section 21 of the 1948 Act preserved all "rights or liabilities" under the repealed sections. We assume, without deciding, that this reservation has no effect on the running of a statute of limitations. See *United States* v. *Obermeier,* 186 F. 2d 243, 251. The Reviser added at the beginning of the section a new clause reading "when the United States is at war" to make the section "permanent instead of temporary legislation, and to obviate the necessity of reenacting such legislation in the future." See Reviser's note following 18 U. S. C. (Supp. II) § 3287.

be committed during the post-hostilities period—is persuasive indication that Congress made the Act operative after, as well as before, the termination of hostilities.

We take the contrary view. We conclude that the Suspension Act is inapplicable to crimes committed after the date of termination of hostilities. The words of the Act are that the "running" of the statute of limitations "shall be suspended until three years after the termination of hostilities." The connotation is that offenses occurring prior to the termination of hostilities shall not be allowed legally to be forgotten in the rush of the war activities. That is the gist of the Reports.[2] The fear was that the

---

[2] S. Rep. No. 1544, 77th Cong., 2d Sess., pp. 1–2:

"The purpose of the proposed legislation is to suspend any existing statutes of limitations applicable to offenses involving the defrauding or attempts to defraud the United States or any agency thereof, for the period of the present war. Contracting for the United States is done through its various agencies, including the departments and independent establishments and Government-owned and Government-controlled corporations, and frauds against all of these agencies are intended to be embraced by the bill.

"During normal times the present 3-year statute of limitations may afford the Department of Justice sufficient time to investigate, discover, and gather evidence to prosecute frauds against the Government. The United States, however, is engaged in a gigantic war program. Huge sums of money are being expended for materials and equipment in order to carry on the war successfully. Although steps have been taken to prevent and to prosecute frauds against the Government, it is recognized that in the varied dealings opportunities will no doubt be presented for unscrupulous persons to defraud the Government or some agency. These frauds may be difficult to discover as is often true of this type of offense and many of them may not come to light for some time to come. The law-enforcement branch of the Government is also busily engaged in its many duties, including the enforcement of the espionage, sabotage, and other laws.

"Your committee is of the opinion that action should be taken at this time to extend the limitations statute so that frauds may be

law-enforcement officers would be so preoccupied with prosecution of the war effort that the crimes of fraud perpetrated against the United States would be forgotten until it was too late. The implicit premise of the legislation is that the frenzied activities, existing at the time the Act became law, would continue until hostilities terminated and that until then the public interest should not be disadvantaged. The prosecution would have us change the function of the date of termination of hostilities. It would be used to provide various periods of suspension for crimes committed within the three-year period commencing with the termination of hostilities. That seems to us to be an alteration in the statutory scheme, one that destroys its symmetry. Since under our construction the three-year period prescribed by the Suspension Act starts to run at the date of termination of hostilities, all crimes to which the Act is applicable are treated uniformly. The time when law-enforcement officers were busy with war activities is not counted; when the pressure was off, the time began to run again. No reasons

---

discovered and punished even after the termination of the present conflict, and to insure that the limitations statute will not operate, under stress of the present-day events, for the protection of those who would defraud or attempt to defraud the United States."

The history of the 1944 Amendment supports the same view. S. Rep. No. 1057, 78th Cong., 2d Sess., p. 14, states:

"As was provided in the Contract Settlement Act of 1944, the statute of limitations with respect to offense against the laws of the United States arising in connection with activities under this act was suspended until 3 years after termination of hostilities in the present war. This provision has been necessitated by the magnitude of the operations involved under this act, and the intensive preoccupation of both participants and witnesses with the war effort. It is clear that the bulk of the offenses cognizable under this statute will not be apprehended or investigated until the end of the war and will then require considerable time before they advance to the stage of litigation."

of policy are suggested for straining the language of the Act to suspend the running of the statute beyond the emergency which made the suspension seem advisable.

*Affirmed.*

MR. JUSTICE CLARK, concurring.

I join in the opinion and judgment of the Court. Soon after the beginning of World War II, Congress realized that it would be impossible for the Department of Justice currently to investigate and prosecute the large number of offenses arising out of the war effort. Therefore Congress suspended the running of the statute of limitations as to frauds against the Government, first until June 30, 1945, and subsequently until three years after the termination of hostilities. It is clear that Congress intended to give the Department more time to apprehend, investigate, and prosecute offenses occurring "under the stress of present-day events" of the war "even after the termination of the present conflict." H. R. Rep. No. 2051, 77th Cong., 2d Sess. 2; S. Rep. No. 1544, 77th Cong., 2d Sess. 2; see *United States* v. *Gottfried,* 165 F. 2d 360 (1948). V-E Day was May 8, 1945, and V-J Day was September 2, 1945. Immediately after V-J Day all war procurement stopped, contracts were canceled, and renegotiation was speeded up. The President did not proclaim the cessation of hostilities until December 31, 1946, sixteen months after the fighting ceased. During this period, the pressing problems of demobilization and reconversion—problems likely to cause the continued perpetration of frauds on the Government—were for the most part brought to an end.

The present cases had nothing to do with the war or the reconversion thereafter; Smith being charged with forgery of a Government check for $90 dated June 30, 1947, and Dailey being indicted for having made a false statement on March 14, 1947, to the Department of Agri-

culture as to value of his farm, cows, poultry, etc., in connection with an application for the services of the Farmers Home Administration. Both of the offenses occurred long after the fighting war was over and after "the intensive preoccupation of both participants and witnesses with the war effort"* had ceased, if ever those persons were so employed.

These cases clearly illustrate that the suspension statute was not intended to and should not embrace offenses committed subsequent to December 31, 1946. It applies only to offenses committed between August 25, 1939, and December 31, 1946. For those offenses which occurred between the date of the 1942 Act and the cessation of hostilities, Congress' intention was to give the Department of Justice six years from the latter date to investigate and prosecute. For those offenses which occurred before the date of the 1942 Act, Congress' intention was to give the Department three years after the cessation of hostilities plus whatever portion of the regular three-year limitations' period had not yet run when the 1942 Act was passed.

MR. JUSTICE MINTON, with whom MR. JUSTICE REED, MR. JUSTICE JACKSON and MR. JUSTICE BURTON join, dissenting.

As I read the statute, Congress intended the statute of limitations to be suspended until three years after the termination of hostilities, which would be December 31, 1949. Until that time, there was to be no statute of limitations. On that date the suspension was lifted, and the statute began to run again. The Court's construction that the suspension was lifted at the termination of hostilities gives no effect to the three-year period. I would reverse the judgments in these cases.

---

*S. Rep. No. 1057, 78th Cong., 2d Sess. 14.