## UNITED STATES v. SHOWALTER.

### No. 32943.

United States District Court
N. D. California, S. D.
March 26, 1952.

Chauncey Tramutolo, U. S. Atty. Northern District of California, San Francisco, Cal., for plaintiff.

James T. Davis and Davis & Colvin, all of San Francisco, Cal., for defendant.

OLIVER J. CARTER, District Judge.

The defendant has been charged in thirty-three (33) counts, by way of information, with a violation of the Servicemen's Dependents Allowance Act of 1942, Title 37 U.S.C.A. § 216.[1] The information was filed on May 7, 1951 and the alleged violations extend over a period of time from September 25, 1942 to and including August 21, 1945.

The defendant has filed a motion to dismiss the information upon the ground that the prosecution for the offenses alleged therein is barred by the statute of limitations. The government concedes that the prosecution on the information would be barred by the three-year statute of limitations, 18 U.S.C.A. § 3282, unless that statute has been tolled by the statute providing for wartime suspension of limitations, 18 U.S.C.A. § 3287. The defendant admits that each count of the information alleges an offense that would come within the provisions of subdivision 1 of Section 3287[2]

if the section tolls the statute of limitations. Both the government and the defendant agree that the termination of hostilities occurred on December 31, 1946 by Presidential Proclamation, No. 2714, 61 Stat. pt. 2, 1048–1049, 12 Fed.Reg. 1, 50 U.S.C.A.Appendix, § 601 note.

The motion to dismiss raises the question as to whether the Suspension Statute tolls the statute of limitations only until the termination of hostilities or suspends its running for a period of three years thereafter. If the three-year period of limitations started to run upon December 31, 1946 (the date of the termination of hostilities) then further proceedings on this information are barred. On the other hand, if the three-year period of limitations did not commence to run until December 31, 1949 (three years after the termination of hostilities) then further proceedings under this information would not be barred; the information having been filed on May 7, 1951.

The defendant contends that there is a patent ambiguity in the Suspension Statute arising from the words "the running of any statute of limitations * * * shall be suspended until three years after the termination of hostilities". She further argues than any doubt created by this ambiguity should be resolved in her favor. In support of the first contention the defendant relies upon the case of United States v. Smith, 342 U.S. 225, 72 S.Ct. 260, to establish not only that the Suspension Statute operated to toll the statute of limitations only until the cessation of hostilities, but also that the alleged confusion apparent on the face of the Suspension Statute is further compounded by judicial difficulty of interpretation. That the decision in that case and the

---

1. "§ 216. Fraudulently Obtaining or Receiving Funds or Family Allowances; Penalties. Whoever shall obtain or receive any money, check, or family allowance under this chapter, without being entitled thereto and with intent to defraud, shall be punished by a fine of not more than $2,000, or by imprisonment for not more than one year, or both." (June 23, 1942, ch. 443, title I, § 116, 56 Stat. 385.)

2. "§ 3287. When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, * * * shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress."

apparent division among the justices of the Supreme Court on that question might cause confusion in the minds of the parties litigant here is not determinative of whether or not the plain language of the Suspension Statute is ambiguous as applied to this case. In the Smith case, supra, the offense occurred on or about July 1, 1947 (after the termination of hostilities) and the indictment was returned on October 2, 1950. The Court decided that the Suspension Statute was inapplicable to crimes committed after the termination of hostilities. Although the Court did not have before it the question of any crime committed before the cessation of hostilities (as were the crimes in this case), and therefore its decision in that case is not determinative of the issue in this case, the Court did say, 342 U.S. at page 227, 72 S.Ct. at page 261: "It is therefore clear that if the designated offenses were committed within the three-year period prior to the date of the Act or between the date of the Act and December 31, 1946, the statute of limitations would be suspended."

In his concurring opinion Mr. Justice Clark stated, 342 U.S. at page 231, 72 S. Ct. at page 263: "For those offenses which occurred between the date of the 1942 Act and the cessation of hostilities, Congress' intention was to give the Department of Justice six years from the latter date to investigate and prosecute."

In view of these statements it cannot be said that the Supreme Court in the Smith case, supra, considered the challenged language of the Suspension Statute to be ambiguous when applied to offenses committed prior to the cessation of hostilities and after the Suspension Act became effective.

█ The real contention of the defendant here is that the alleged ambiguity of the language used requires an interpretation limiting the period of suspension to the date of the cessation of hostilities. She refers to those cases [3] which require a liberal interpretation in favor of repose. However, the applicability of this principle comes into play only when there is room for interpretation of the language used by Congress. It still leaves unanswered the question of whether the intention of Congress is clear and unmistakable in the light of the language used in the Statute.

This court is not confronted with the question of whether the offenses charged come within the purview of the Statute,[4] the question most frequently raised by defendants in cases in which the prosecution is relying upon the Suspension Statute to extend the period of limitations. Consequently those cases which discuss this question are of little help here, and the apparent conflict between Marzani v. United States [5] on the one hand and United States v. Gottfried [6] on the other is not present here.

█ Any consideration of the meaning of the plain language of the Statute must assume that Congress intended to accomplish some sound objective by the language used.[7] The Servicemen's Dependents Allowance Act of 1942, the Act under which

3. United States v. Scharton, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917; United States v. Zisblatt Furniture Co., D.C. N.Y., 78 F.Supp. 9.

4. The defendant has conceded that the indictment charges the intent to defraud the government in conformity with Title 37 U.S.C.A. § 216 and that the offenses thus charged come within the meaning of "any offense (1) involving fraud * * * against the United States * * *" as used in Title 18 U.S.C.A. § 3287.

5. 83 U.S.App.D.C. 78, 168 F.2d 133. See also: United States v. Obermeier, 2 Cir., 186 F.2d 243; United States v.

Shoso Nii, D.C.Hawaii, 96 F.Supp. 971; United States v. Scharton, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917; United States v. Noveck, 271 U.S. 201, 46 S.Ct. 476, 70 L.Ed. 904.

6. Cir. 2, 165 F.2d 360. See also: United States v. Bridges, D.C.Cal., 86 F.Supp. 922; United States v. Jaffe, D.C.D.C., 98 F.Supp. 191; United States v. Choy Kum, D.C.Cal., 91 F.Supp. 769.

7. See discussion of this objective in United States v. Smith, supra, 342 U.S. at pages 228 and 229, 72 S.Ct. 260; also the concurring opinion of Mr. Justice Clark, 242 U.S. at page 230, 72 S.Ct. 260.

the defendant is charged, was one which had its very reason for existence founded upon wartime conditions. The tremendous volume of claims made under the Act during wartime and the attendant investigation of fraudulent claims made thereunder would have made it difficult, if not impossible, to successfully protect the government interest without an extension of the period of limitations beyond the normal period of three years from the date of the crime. Similar problems created by other wartime legislation made it imperative that Congress extend the period of limitations on criminal prosecutions arising out of such legislation beyond the period fixed for normal and ordinary times. As was said in United States v. Gottfried, supra, 165 F.2d at page 368, "Besides, the purpose of the amendment was not to let crimes pass unpunished which had been committed in the hurly-burly of war, an overriding motive which perfectly fits the situation at bar."

To accomplish this objective Congress provided that "the running of any statute of limitations * * * shall be suspended until three years after the termination of hostilities".[8] It did not provide, as it could have, that the running of any statute of limitations should be suspended until the termination of hostilities, nor did it fix a new and longer period of limitations by amending each statute of limitations which might be involved. It simply and plainly suspended the running of any statute of limitations on any criminal act coming within the purpose of the Statute to and until a future ascertainable date after hostilities had been terminated.

There is no ambiguity or uncertainty in the meaning of the word "suspended." It has been defined and interpreted both judicially and as a matter of common usage. The dictionary[9] definition is, "temporarily debarred, inactive, inoperative, held in abeyance." This court had previously had occasion to pass upon the plain meaning of this word when used in connection with the internal revenue laws. In United States v.

Markowitz, D.C.Cal., 34 F.Supp. 827, at page 830 the court said: "In Section 277 (b) of the Internal Revenue Act of 1926, 26 U.S.C.A.Int.Rev.Code § 277, there is contained a provision that 'the running of the statute of limitations * * * on the making of assessments * * * in respect of any deficiency, shall * * * be suspended for the period during which the Commissioner is prohibited from making the assessment * * * and for sixty days thereafter.' In interpreting the effect of this provision, the court, in the case of Olds & Whipple v. United States, Ct. Cl., 22 F.Supp. 809, at page 819, stated: ' "Suspended" was here used in its common and general usage, meaning held in abeyance, temporarily inoperative, arrested, interrupted, stopped for a time. And we think it is clear that Congress intended by the language used that the limitation period specified in the statutes should simply be held in abeyance and should not run during the specified period and that at the end of such period the statute should again commence to run. The 60 days after the decision of the Board becomes final is simply a part of the suspended period and the Commissioner is entitled, in making the assessment of a deficiency determined by the Board, to use the 60-day period together with any unexpired portion of the statute of limitation remaining at the time it became suspended by the mailing of the deficiency notice.' "

It should be borne in mind that the same rule of liberal construction in favor of repose applies to internal revenue cases.[10]

It must be concluded, therefore, that the Suspension Statute by clear and unambiguous language suspended or held in abeyance the running of the statute of limitations applicable to the offenses charged in this information until December 31, 1949 (three years after the cessation of hostilities), and that the statute of limitations then started to run. The three year statute would not have run until December 31, 1952, and since the information

8. Supra, Note 2.

9. Webster's Unabridged Dictionary, Second Ed.

10. United States v. Havner, 8 Cir., 101 F.2d 161.

810

was filed on May 7, 1951, the prosecution of the defendant on the information is not barred. The motion to dismiss the information is denied.