**UNITED STATES of America**

v.

**Harold LURIE and Samuel Dworett.**

**No. 11090.**

United States Court of Appeals
Seventh Circuit.

May 2, 1955.

Rehearing Denied June 6, 1955.

Myer H. Gladstone, Nathan M. Cohen, John J. Kelly, Jr., Emanuel Gordon, George F. Callaghan, Robert S. Fiffer, Chicago, Ill., of counsel, for appellants.

Robert Tieken, U. S. Atty., Charles V. Kralovec, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

Defendants were convicted after a trial by jury of conspiracy to defraud the United States of certain governmental rights and functions to administer the sale of surplus property under the Sur-

plus Property Act of 1944, 50 U.S.C.A. Appendix, § 1611 et seq., in violation of § 88, Title 18 U.S.Code.[1] They were also convicted on seven substantive counts. The first of such counts charged defendants with filing false certificates with the War Assets Corporation, and the other six counts charged the filing of like certificates with the War Assets Administration, all in violation of § 80, Title 18 U.S.Code.[2] The indictment against the defendants was found on December 30, 1952.

In more detail, Count 1 charged that commencing in December, 1945 and continuously to August, 1946, at Chicago, Illinois, defendants Lurie and Dworett conspired to defraud the United States of and concerning its governmental right and function in the orderly liquidation of surplus war assets. In substance, the conspiracy charged that in order to fraudulently and unlawfully procure Veterans' preferences in the purchase of surplus property and thus acquire such surplus property for themselves and for Rel Sales Company, Inc., defendants advised and caused divers honorably discharged veterans of World War II to make applications for surplus property to the War Assets Corporation and War Assets Administration on Veterans' Application for Surplus Property Form (SWPG–66) ; and advised and counseled said veterans to falsify divers material statements and entries on said applications.

Counts 2 to 7 were similar in form charging defendants knowingly and wilfully caused to be made and used a false certificate knowing the same to contain fraudulent and fictitious statements and entries. Each certificate purported to be executed by and upon behalf of a different veteran.

Defendants filed motions to dismiss the indictment challenging its sufficiency, and also urging that the indictment was barred by the three year statute of limitations, § 3282, Title 18 U.S.Code. Defendants insist that the last date upon which an indictment could be returned on the conspiracy count was June 1, 1949, and on the substantive counts, May 8, 1949. However, the government contends that the statute of limitations did not commence to run until three years after December 31, 1949, because it was suspended by the operation of the Wartime Suspension of Limitations Act, § 3287, Title 18 U.S.Code.

The pertinent part of the last named statute reads: "When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) * * *, shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress." Hostilities of World War II were declared terminated December 31, 1946 by Presidential proclamation, 12 Fed.Reg. 1, Proclamation No. 2714, 50 U.S.C.A.Appendix, § 601 note.

In 1945 and 1946, § 80, Title 18 U.S. Code contained both the False Claims Act and the False Statement Act. As a result of the 1948 codification of Title 18, the False Claims Act is now contained in § 287, and the False Statement Act in § 1001 of Title 18 U.S.Code (1952 Ed.).

The first and most complex question to be decided is the effect of the Wartime Suspension of Limitations Act. If the three year statute of limitations did not commence to run until three years after the termination of hostilities, as contended by the government, the indictment herein found on December 30, 1952 was timely by the scant margin of a day.

Our task in resolving this issue is made difficult because the Supreme Court has been so closely divided in a number of pertinent decisions and because there is no decision of that Court on the precise

---

1. Now 18 U.S.C. § 371.

2. Now 18 U.S.C. §§ 287, 1001.

point which we here have under consideration.

In United States v. Smith, 342 U.S. 225, 72 S.Ct. 260, 96 L.Ed. 252, a 5 to 4 decision, the Court held the Wartime Suspension of Limitations Act was inapplicable to crimes committed after December 31, 1946, the date when hostilities were declared terminated. In the case at bar the alleged violations were prior to that date. However, in the Court's opinion appear certain dicta which the government claims are favorable to its contentions herein.

In United States v. Grainger, 346 U.S. 235, 73 S.Ct. 1069, 97 L.Ed. 1575, a 6 to 3 decision, the Court held the running of the general three year statute of limitations was suspended by the Wartime Suspension of Limitations Act as to violations in 1945 and 1946 of the false claims clause of the False Claims Act. However, the Court emphasized, 346 U.S. at page 241, 73 S.Ct. at page 1073: " * * * The offenses charged in Cases No. 634 and No. 635 are violations of the *false claims clause,* as distinguished from the *false statement clause,* of the False Claims Act." The Court said, 346 U.S. at page 242, 73 S.Ct. at page 1073: " * * * Our problem is simpler than in the Bridges case [Bridges v. United States],[3] and in those cases which involve violations of the false statement clause of the False Claims Act."

The government argues that the first part of Count 1 of the indictment herein, the conspiracy count, charges the substantive offense of conspiring to defraud the United States and that such fraud is an essential ingredient of the offense charged. The defendants contend that all of the charges of the indictment come within the false statement clause of the False Claims Act which were specifically distinguished in the Grainger decision.

Previous to Grainger the Supreme Court held that knowingly making a false material statement pertaining to Communist-party affiliation in a naturalization proceeding, or a conspiracy to defraud the United States by so doing, does not contain fraud as an essential ingredient, Bridges v. United States, 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557; that false statements to the Civil Service Commission and the F.B.I. in seeking federal employment did not contain the necessary pecuniary fraud, Marzani v. United States, 83 U.S.App.D.C. 78, 168 F.2d 133, affirmed twice without opinion by an equally divided court, 335 U.S. 895, 69 S.Ct. 299, 93 L.Ed. 431, 336 U.S. 922, 69 S.Ct. 653, 93 L.Ed. 1084; that defrauding the United States is not an element of the crime of perjury in an income tax return, United States v. Noveck, 271 U.S. 201, 46 S.Ct. 476, 70 L.Ed. 904; nor a conspiracy to defraud by making a false income tax return, United States v. McElvain, 272 U.S. 633, 47 S.Ct. 219, 71 L.Ed. 451; nor of attempting to evade taxes by falsely understating taxable income, United States v. Scharton, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917.

The probable holding of the Supreme Court on the question before us is further obscured by United States v. Klinger, 2 Cir., 199 F.2d 645, affirmed by an equally divided Court, 345 U.S. 979, 73 S.Ct. 1129, 97 L.Ed. 1393. Furthermore, the three dissenting judges in Grainger base their dissent upon approval of the reasoning of Judge L. Hand in the Klinger case. In Klinger the prosecution was for conspiracy to defraud the United States by impairing, obstructing or defeating the lawful functioning of the office of Price Administration in the rationing of sugar. There was no conspiracy proved after December 31, 1946 and the indictment was found on March 31, 1950. The Court of Appeals stated the issue was not free from doubt. It recognized that its decision was contra to United States v. Showalter, D.C., 103 F.Supp. 806, but held that the prosecution was barred by the statute of limitations.

In the Showalter case the charge was a violation of the Servicemen's Dependents Allowance Act of 1942. The last

---

3. 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557.

offense charged was in 1945; the information was filed May 7, 1951. It was agreed the prosecution was barred by the three year statute of limitations unless that statute was tolled by the Wartime Suspension of Limitations Act. The question was squarely raised whether the Suspension Act suspended the running of the statute of limitations for a period which commenced three years after the termination of hostilities. The Court held that it did and that the prosecution was not barred.

■ We think the offenses charged in the indictment should be classified under the false statement clause rather than the false claims clause of the False Claims Act. The statutory crime charged was that of wilfully and knowingly causing false certificates to be made and used. Fraud is not an element of this crime. The offense is complete when a person wilfully and knowingly causes a false certificate to be made and used. The government need not charge nor prove fraud. Clearly, Counts 2 through 7 are within the false statement clause. We hold that Count 1 is in the same category. We think none of the language used in Count 1, the conspiracy count, justifies a classification of the offense under the false claims clause. There was a somewhat similar charge of conspiracy in United States v. Bridges, supra. The Court there said, 346 U.S. at page 223, 73 S.Ct. at page 1063: "* * * A charge of conspiracy to commit a certain substantive offense is not entitled to a longer statute of limitation than the charge of committing the offense itself. There is no additional time prescribed for indictments for conspiracies as such. The insertion of surplus words in the indictment does not change the nature of the offense charged."

Based upon language used by the Supreme Court in Grainger, there is some justification for defendants' argument that the Wartime Suspension of Limitations Act applies only to offenses involving fraud of a pecuniary nature or to offenses of which fraud is an essential ingredient. We must recognize that the Court laid great emphasis in distinguishing the false claims clause from the false statement clause in the False Claims Act. Also, the Court stated its problem in Grainger was simpler than in those cases which involved violation of the false statement clause. Nevertheless, neither the Supreme Court nor any Court of Appeals has made any reference to Clause 2 of the Wartime Suspension of Limitations Act. We can think of no reason why it is not applicable. It reads: "When the United States is at war the running of any statute of limitations applicable to any offense * * * (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States * * * shall be suspended until three years after the termination of hostilities * * *." It seems clear that the offenses charged in the indictment herein were in connection with the " * * * custody, control or disposition of any * * * personal property of the United States * * *." Furthermore, this particular clause was added to the Suspension Act by the Surplus Property Act of 1944. Congress was thinking about the disposition of surplus property when it passed the amendment. Thus, there is nothing in either the wording of the statute or in its history, that suggests any reason why it does not apply to the offenses charged in the case at bar. We hold, therefore, that the prosecution was timely and was not barred by the three year statute of limitations.

■ Defendants assert that the counts of the indictment are void since they charge that as of March 25, 1946 the matters referred to therein were within the jurisdiction of the War Assets Administration when, in fact, they were within the jurisdiction of the War Assets Administrator. Defendants rely upon the following provision in Executive Order No. 9689, issued January 31, 1946, 11 Fed.Reg. 1265, U.S.Code Cong.Service 1946, p. 1761, " * * * the functions of the War Assets Corporation relative to surplus property and of the

chairman of the board of directors of the War Assets Corporation relative to surplus property shall be transferred to the War Assets Administrator." However, we think the entire order, together with a letter from the President dated May 1, 1947 which he sent to Congress transmitting Reorganization Plan No. 1 of 1947, 5 U.S.C.A. § 133y–16 note, demonstrates that the responsibility for the disposal of surplus property was placed in one agency, the War Assets Administration, headed by a War Assets Administrator. We hold the contentions of defendants in this respect to be without merit. Todorow v. United States, 9 Cir., 173 F.2d 439.

■ Defendants urge that each of the substantive counts, 2 through 7, is void for vagueness, uncertainty and repugnancy. Each of these counts was based upon a certificate signed by a veteran containing false material statements. The charge was that defendants caused to be made and used a false certificate " * * * which said false certificate and accompanying and attached veteran's application for Surplus Property form SWPC–66 were of the tenor and description following, to-wit:" Then follows a photostatic copy of the certificate together with two pages of the accompanying application. Defendants complain that some of the copies of the certificate were not signed. However, government exhibits 50A, 51A, 52A, 53A and 54A upon which counts 2 through 7 were based, show each certificate was, in fact, signed. The testimony of the respective veterans also showed that they signed the certificates. The defendants were in no way misled. We find no error in this respect.

■ Defendants complain of an instruction on aiding and abetting, contending that one cannot aid or abet in the commission of a crime unless there was another who has committed the offense, —that one cannot be an aider and abettor of himself. Without going into the merits, it is clear that no objection was made to this instruction pursuant to Rule

30, Federal Rules of Criminal Procedure, 18 U.S.C., after the instructions were given to the jury. At a conference before the jury was instructed the Court informed counsel for each defendant that such an instruction would be given. Counsel for defendant Lurie voiced no objection. Counsel for Dworett made an objection which was equivocal, to say the least. It did not come close to complying with Rule 30. We hold that under the circumstances of this case the giving of the instruction was not prejudicial error. United States v. Furlong, 7 Cir., 194 F.2d 1, 3.

We have considered the other claims of error presented by the defendants. We think a discussion of them is unnecessary and would unduly extend this rather lengthy opinion. Suffice to say, we find no prejudicial error in this record. The judgment of conviction is

Affirmed.