**UNITED STATES of America**

v.

**Frank COVOLLO.**

**Civ. A. 18268.**

United States District Court
E. D. Pennsylvania.

Oct. 26, 1955.

W. Wilson White, U. S. Atty., Philadelphia, Pa., for plaintiff.

Irving J. Katz, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This matter is before the court on defendant's motion to dismiss the action

on the ground that suit is barred by the statute of limitations. The Government's complaint, filed on December 29, 1954, seeks a recovery of $2,000 from the defendant for alleged violations of the Surplus Property Act of 1944[1] on December 30, 1946.

█ The defendant contends that this is an action for the recovery of a penalty and, therefore, subject to a five-year statute of limitations.[2] The plaintiff argues, on the other hand, that this is merely a civil suit wherein the Government is seeking to recover compensation for the actual damages suffered by it because of the alleged fraud of the defendant, and, therefore, no statute of limitations is applicable.[3] The Surplus Property Act of 1944 provides, in effect, that for every violation thereof the Government shall be entitled to recover the sum of $2,000.[4] It is significant that this amount is recoverable by the Government without reference to the extent of the damage suffered or, indeed, whether damage was suffered at all. This fact and a reading of the statute clearly indicate that this is an action for a penalty.[5]

█ In all actions for the recovery of a "civil fine, penalty, or forfeiture", a

1. Act of October 3, 1944, Chap. 479, 58 Stat. 765, as amended, repealed and re-enacted as Act of June 30, 1949, Chap. 288, Title II, Section 209, 63 Stat. 392, 40 U.S.C.A. § 489.

2. "No suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States, shall be maintained, except in cases where it is otherwise specially provided, unless the same is commenced within five years from the time when the penalty or forfeiture accrued: *Provided*, That the person of the offender, or the property liable for such penalty or forfeiture, shall, within the same period, be found within the United States; so that the proper process therefor may be instituted and served against such person or property." Revised Statutes, Sec. 1047, 28 U.S.C. § 791 (1940 ed.); now 28 U.S.C. § 2462.

3. Cases such as Lucas v. Pilliod Lumber Co., 1930, 281 U.S. 245, 50 S.Ct. 297, 74 L.Ed. 829, hold that a statute of limitations does not ordinarily run against the Federal Government.

4. The statute provides that any person who violates its provisions:
"(1) shall pay to the United States the sum of $2,000 for each such act, and double the amount of any damage which the United States may have sustained by reason thereof, together with the costs of suit; or
"(2) shall, if the United States shall so elect, pay to the United States, as liquidated damages, a sum equal to twice the consideration agreed to be given by such person to the United States or any Government agency; or
"(3) shall, if the United States shall so elect, restore to the United States the property thus secured and obtained and the United States shall retain as liquidated damages any consideration given to the United States or any Government agency for such property." Act of October 3, 1944, Chap. 479, Sec. 26, 58 Stat. 780; now 40 U.S.C.A. § 489.

5. In Huntington v. Attrill, 1892, 146 U.S. 657, 13 S.Ct. 224, 227, 36 L.Ed. 1123, the court defined a "penalty" as " * * * any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered."
Although Helvering v. Mitchell, 1938, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917, and United States ex rel. Marcus v. Hess, 1943, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, hold that statutes affording remedies similar to those offered in the Surplus Property Act of 1944 are merely compensatory and not penal, these cases do not control; for in those cases the issue before the court was whether the imposition of such penalties would place the defendants in double jeopardy. The word "offense" in the double jeopardy provision of the Fifth Amendment includes situations where a criminal sanction is involved, whereas the issue here is whether an admittedly civil proceeding is a "penalty or forfeiture, pecuniary or otherwise" as those words are used in Sec. 1047 of the Revised Statutes. Op. cit. supra footnote 2. Cf. United States v. Witherspoon, 6 Cir., 1954, 211 F.2d 858. Although my reasoning differs from that in United States v. Weaver, 5 Cir., 1953, 207 F.2d 796, the position taken in the Witherspoon case has been adopted in this District. See United States v. Kolsky, D.C.E.D.Pa.1955, 137 F.Supp. 359, opinion of Welsh, J.

five-year statute of limitations applies.[6] Since the violation enumerated in the Government's complaint occurred on December 30, 1946, it would appear that the statute became a bar on December 29, 1951, and the complaint filed on December 29, 1954, came too late. But the plaintiff argues that if this is an action for a penalty and, thus, subject to the statute of limitations, the Wartime Suspension of Limitations Act applies and, under its terms, the action was not barred until December 31, 1954.[7] The defendant contends, however, that the Suspension of Limitations Act is directed to criminal actions only and does not apply to civil suits such as this. In view of numerous holdings to the contrary[8] and the history of the Suspension of Limitations Act,[9] the defendant's position is rejected.

■ Also, the defendant, relying on the case of United States v. Klinger, 2 Cir., 1952, 199 F.2d 645, affirmed by an equally divided court, 1953, 345 U.S. 979, 73 S.Ct. 1129, 97 L.Ed. 1393, argues that even if the Suspension of Limitations Act applies, it operates only to suspend the barring of this action until December 31, 1949. In that case, in an opinion by Judge Learned Hand, the Second Circuit construed the word "running" in the Suspension of Limitations Act [10] as meaning "bar" and, therefore, held that the Statute of Limitations ran on December 31, 1949, on all offenses committed within the prescribed period (this date being three years after the termination of hostilities on December 31, 1946). However, in United States v. Grainger, 1953, 346 U.S. 235, at page 246, 73 S.Ct. 1069, at page 1075, 97 L.Ed. 1575, the United States Supreme Court rejected the reasoning of Judge Hand, using this language:

"When the President, December 31, 1946, proclaimed the termination of hostilities of World War II, 3 CFR, 1946 Supp., 77–78, this automatically caused the resumption of the running of statutes of limitations on December 31, 1949. Ac-

6. Op. cit. supra, Note 2.

7. "The running of any existing statute of limitations applicable to any offense against the laws of the United States (1) involving defrauding or attempts to defraud the United States or any agency thereof whether by conspiracy or not, and in any manner, or (2) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancellation or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the present war, or with any disposition of termination inventory by any war contractor or Government agency, or (3) committed in connection with the care and handling and disposal of property under the Surplus Property Act of 1944, shall be suspended until three years after the termination of hostilities in the present war as proclaimed by the President or by a concurrent resolution of the two Houses of Congress. * * *" Act of October 3, 1944, Chap. 479, Sec. 28, 58 Stat. 781; now 18 U.S.C. § 3287.

The period of suspension of limitations provided by this Section terminated three years after the termination of hostilities of World War II, which was proclaimed at 12 o'clock noon of December 31, 1946, by Proclamation No. 2714, 12 F.R. 1, 50 U.S.C.A.Appendix, § 601 note.

8. See, for example, United States v. Witherspoon, 6 Cir., 1954, 211 F.2d 858, and United States v. Murphy-Cook & Co., D.C.E.D.Pa.1954, 123 F.Supp. 806.

9. See the discussion of the legislative history in Dugan & McNamara, Inc., v. United States, Ct.Cl.1955, 127 F.Supp. 801. The case of Bridges v. United States, 1953, 346 U.S. 209, 73 S.Ct. 1055, 1060, 97 L.Ed. 1557, held that the first subsection of the Wartime Suspension of Limitations Act applied only to frauds of a "pecuniary nature" or of a nature concerning property. However, even if this is not an offense of a pecuniary nature (which I do not decide), the second subsection of the Suspension of Limitations Act, which makes the Act applicable to offenses " * * * committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States", adequately covers the situation here presented. See United States v. Lurie, 7 Cir., 1955, 222 F.2d 11, certiorari denied 76 S.Ct. 71.

10. Supra, note 7.

cordingly, in relation to the instant offenses committed in 1945 and 1946, during the period of suspension, the general three-year limitation prescribed by 18 U.S.C. (Supp. V) § 3282, U.S.C.A. § 3282, began to run for the first time on January 1, 1950, and expired December 31, 1952.

"United States v. Smith, 342 U.S. 225, 72 S.Ct. 260, 96 L.Ed. 252, held that the offenses to which the Suspension Act applied were only those actually committed *before* the termination of hostilities· December 31, 1946. The length of the period for their prosecution was not there in controversy because the offenses occurred in 1947. That period, however, was mentioned either directly or by implication in the concurring and dissenting opinions published on behalf of a majority of the members of the Court. The following statement was made in the concurring opinion:

" 'These cases clearly illustrate that the suspension statute was not intended to and should not embrace offenses committed subsequent to December 31, 1946. It applies only to offenses committed between August 25, 1939, and December 31, 1946. For those offenses which occurred between the date of the 1942 Act and the cessation of hostilities, Congress' intention was to give the Department of Justice six years from the latter date to investigate and prosecute. For those offenses which occurred before the date of the 1942 Act, Congress' intention was to give the Department three years after the cessation of hostilities plus whatever portion of the regular three-year limitations' period had not yet run when the 1942 Act was passed.' 342 U.S. at page 231, 72 S.Ct. at page 263.

"This issue was before the Court in No. 527, United States v. Klinger, 2 Cir., 199 F.2d 645, which this day is affirmed by an evenly divided Court, 345 U.S. 979, 73 S.Ct. 1129 [97 L.Ed. 1393]. In that case, however, there was presented not only this issue but also an issue as to whether the offense charged was one involving fraud of a pecuniary nature upon the United States." [11]

For the above reasons, I hold that the statute of limitations on this action did not expire until December 31, 1954, and that the complaint filed on December 29, 1954, was timely.

---

11. Defendant points out that the Grainger opinion was handed down the same day that the Klinger case was affirmed by an equally divided court. Therefore, defendant contends that the issue is as yet undecided. However, the last paragraph in the above-quoted excerpt from the Grainger case explains that the Klinger affirmation was based on a point other than that covered by the first two paragraphs of the above quotation.