**UNITED STATES of America,**
**Plaintiff,**

v.

**Albert PEZZATI, Raymond Dennis, Irving Dichter, Graham Dolan, James Durkin, Asbury Howard, Alton Lawrence, Jack C. Marcotti, Chase J. Powers, Harold Sanderson, Albert Skinner, Maurice E. Travis, Jesse R. Van Camp, Charles H. Wilson, Defendants.**

Crim. A. No. 15124.

United States District Court
D. Colorado.
March 27, 1958.

Donald E. Kelley, U. S. Atty. for District of Colorado, Denver, Colo., Lafayette E. Broome, Cecil R. Heflin, Dept. of Justice, Washington, D. C., for plaintiff.

Telford Taylor, Nathan Witt, New York City, Eugene Deikman, Denver, Colo., for defendants.

KNOUS, Chief Judge.

The defendants have interposed a motion to dismiss the indictment. Extended oral arguments on the motion were heard following which the parties were requested by the Court to submit memoranda on the points and authorities upon which they relied. While several alleged grounds for dismissal were enumerated in the motion, the arguments and memoranda submitted by counsel primarily have been directed to the contention of the defendants that the indictment does not state facts sufficient to constitute an offense against the United States.

The indictment charges conspiracy to defraud the United States. It covers the period from June 15, 1949, to the date of the return of the indictment, November 16, 1956. The defendants are fourteen officials and employees of the International Union of Mine, Mill and Smelter Workers, a labor organization within the meaning of the Labor Management Relations Act of 1947 (29 U.S.C.A. § 152(5)). The charge is that the defendants were members of and affiliated with the Communist Party and conspired with each other and with other persons both named and unknown:

(1) Fraudulently to effectuate on behalf of the Union a compliance with section 9(h) of the Labor Management Relations Act of 1947 by means of false and fraudulent statements made to the National Labor Relations Board, an agency of the United States;

(2) Fraudulently to obtain and use for the Union the services and facilities of the Board without a good faith qualification of the Union, and

(3) To pervert and defeat the proper administration of the 1947 Act by the Board.

The indictment asserts, inter alia, that as a part of the conspiracy the defendants would:

(1) File with the Board non-Communist affidavits which would falsely and fraudulently represent that certain Union officers were not members of and affiliates with the Communist Party;

(2) Fraudulently induce the Board to issue to the Union certificates of compliance with section 9(h) of the 1947 Act and fraudulently obtain from the Board the right to make use of the services and facilities of the Board;

(3) With knowledge of the false and fraudulent character of the affidavits and of the fraudulent compliance with section 9(h), use the services and facilities of the Board on behalf of the Union.

The indictment alleges twenty-one overt acts. The first in point of time is said to have occurred on July 19, 1949, and the last on August 11, 1955.

Section 9(h) of the Labor Management Relations Act of 1947 (29 U.S.C.A. § 159 (h)) reads:

"No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods. The provisions of section 35A of the Criminal Code shall be applicable in respect to such affidavits."

Section 35A of the Criminal Code referred to in the above-quoted statute was repealed by the Act of June 25, 1948, 62 Stat. 862, and is now covered by various sections of Title 18 U.S.C. Of these, only 18 U.S.C. § 1001 is pertinent. It provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

The indictment charges a violation of 18 U.S.C. § 371 which, so far as pertinent, provides:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

The position of the Government is that the indictment charges a conspiracy "to defraud the United States" and *not* a conspiracy to commit offenses.

Hence, the argument of defense counsel that the indictment ·is insufficient to state an offense under the conspiracy to commit offenses clause of section 371, supra, need not be considered since, as has been stated, the Government relies solely on the sufficiency of the indictment to charge a conspiracy to defraud the United States.

The fraud on the United States is alleged by the Government to be the use of the facilities and services of the Board for the Union after the fraudulent compliance with section 9(h) by filing of the non-Communist affidavits required by section 9(h) of the 1947 Act. As noted above, this section provides that before a union has certain rights under the Act affidavits must be filed with the Board stating that union officers are free from membership in or affiliation with the Communist Party.

 Section 9(h) does not violate the Federal Constitution (American Communications Ass'n C.I.O. v. Douds, 1950, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925). As stated by the United States Supreme Court, the purposes of section 9(h) are:

(1) "to protect the public not against what Communists * * * advocate or believe, but against what Congress has concluded they have done and are likely to do again" · (American Communications Associ-

ation v. Douds, supra, 339 U.S. at page 396, 70 S.Ct. at page 683).

(2) to "wholly eradicate and bar from leadership in the American labor movement, at each and every level, adherents to the Communist party and believers in the unconstitutional overthrow of our government" (National Labor Relations Board v. Highland Park Co., 1951, 341 U.S. 322, 325, 71 S.Ct. 758, 759, 95 L.Ed. 969);

(3) "to stop the use of the Labor Board by union leaders unwilling to be limited in government by the processes of reason" (National Labor Relations Board v. Dant, 1953, 344 U.S. 375, 385, 73 S.Ct. 375, 381, 97 L.Ed. 407).

 Upon their voluntary compliance with the conditions prescribed, section 9(h) makes available to labor organizations the benefits and advantages arising from

(1) the Board's investigation of questions raised by labor organizations concerning the representation of employees, and

(2) the Board's issuance of complaints pursuant to a charge made by a labor organization (United Mine Workers of America v. Arkansas Oak Flooring Co., 1956, 351 U.S. 62, 70, 73, 76 S.Ct. 559, 100 L.Ed. 941).

These rights are of the utmost importance to trade unions. As said in American Communications Ass'n v. Douds, supra, 339 U.S. at page 390, 70 S.Ct. at page 679:

"The fact is that § 9(h) may well make it difficult for unions to remain effective if their officers do not sign the affidavits."

Section 9(h) makes Section 35A of the Criminal Code applicable to the required affidavits. In Leedom v. International Union of Mine, Mill and Smelter Workers, 1956, 352 U.S. 145, 77 S.Ct. 154, 1 L.Ed.2d 201, and Amalgamated Meat Cutters, etc., v. National Labor Relations Board, 1956, 352 U.S. 153, 156, 77 S.Ct. 159, 160, 1 L.Ed.2d 207, it was held that:

" * * * the sole sanction for the filing of a false affidavit under § 9(h) is the criminal penalty imposed on the officer who files a false affidavit, not decompliance of the union nor the withholding of the benefits of the Act that are granted once the specified officers file their § 9(h) affidavits."

The prosecution here is for conspiracy to defraud in violation of the general conspiracy statute, section 371. It is not a prosecution under section 1001, the false statements statute. In Leedom v. International Union of Mine, Mill and Smelter Workers, supra, 352 U.S. at page 148, 77 S.Ct. at page 156, the Court said, with reference to section 9(h):

"We start with a statutory provision that contains only one express sanction, viz., prosecution for making a false statement."

 The first question is whether a prosecution under section 371 may be maintained. Section 9(h) does not expressly repeal section 371. It is a cardinal rule of construction that repeals by implication are not favored (United States v. Borden Co., 1939, 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181). Where Congress by more than one statute proscribes a private course of conduct, the Government may choose to invoke either applicable law (Rosenberg v. United States, 1953, 346 U.S. 273, 294, 73 S.Ct. 1152, 97 L.Ed. 1607). The existence of a specific criminal statute or a reference thereto such as appears in section 9(h) does not preclude prosecution under other applicable statutes (cf. Edwards v. United States, 1941, 312 U.S. 473, 483–484, 61 S.Ct. 669, 85 L.Ed. 957; United States v. Gilliland, 1941, 312 U.S. 86, 95–96, 61 S.Ct. 518, 85 L.Ed. 598; Wallenstein v. United States, 3 Cir., 1928, 25 F.2d 708). As I read Leedom v. International Union, supra, it does not preclude a prosecution under section 371 for conspiracy to defraud the United States by perverting the lawful function of the Board by means of deceit and chicanery.

Defendants argue that fraud is not an essential element of an offense covered by section 1001 and that a conspiracy to commit a statutory offense of which fraud is not an essential element is punishable only under the offense clause of section 371. From these premises they conclude that this indictment admittedly based upon the conspiracy to defraud clause of section 371 must fall. Defendants cite numerous cases arising under the Wartime Suspension of Limitations Act (18 U.S.C. § 3287) and comparable statutes. These statutes, among other things, extended the period of limitations applicable to offenses involving any fraud or attempted fraud against the United States. There provisions have been determined to apply only to offenses involving a fraud of a pecuniary nature or to offenses of which fraud is an essential ingredient (Bridges v. United States, 1953, 346 U.S. 209, 221, 73 S.Ct. 1055, 97 L.Ed. 1557—conspiracy to defraud by false statement in naturalization proceeding; United States v. Grainger, 1953, 346 U.S. 235, 244, 73 S.Ct. 1069, 97 L.Ed. 1575—conspiracy to defraud by false claims; United States v. Scharton, 1932, 285 U.S. 518, 521, 52 S.Ct. 416, 76 L.Ed. 917—income tax evasion; United States v. McElvain, 1926, 272 U.S. 633, 638, 47 S.Ct. 219, 71 L.Ed. 451—conspiracy to defraud by false income tax returns; United States v. Noveck, 1926, 271 U.S. 201, 203, 46 S.Ct. 476, 70 L.Ed. 904—perjury; Marzani v. United States, 1948, 83 U.S.App.D.C. 78, 168 F.2d 133, 135–137, affirmed without opinion by equally divided court, 335 U.S. 895, 69 S.Ct. 299, 93 L.Ed. 431; 336 U.S. 922, 69 S.Ct. 513, 93 L.Ed. 1075 —False Claims Act; United States v. Obermeier, 2 Cir., 1950, 186 F.2d 243, 256–257, certiorari denied 340 U.S. 951, 71 S.Ct. 569, 95 L.Ed. 685—false statement in naturalization proceedings; United States v. Klinger, 2 Cir., 1952, 199 F.2d 645, affirmed by equally divided court, 345 U.S. 979, 73 S.Ct. 1129, 97 L.Ed. 1393—conspiracy to defraud by obstructing the lawful functioning of the Office of Price Administration in the rationing of sugar; United States v. Lurie, 7 Cir., 1955, 222 F.2d 11, 13–15, certiorari denied 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745—conspiracy to defraud by false statements made to War Assets Corporation and War Assets Administration in connection with administration of sale of surplus property under the Surplus Property Act of 1944, 50 U.S.C.A.Appendix, § 1611 et seq.; cf. United States v. Showalter, D.C.N.D. Cal., 1952, 103 F.Supp. 806—violation of Servicemen's Dependents Allowance Act, 37 U.S.C.A. § 216).

These cases merely hold that for the suspension of limitations acts to be effective there must be an offense involving a pecuniary loss or an offense of which fraud is an essential ingredient. In none of those cases is there a holding that the indictment or information then under consideration failed to state an offense against the United States.

The fallacy of defendants' argument lies in the premise that the indictment here charges a conspiracy to commit a statutory offense (violation of section 1001) of which fraud is not an essential element. I do not so read the indictment. The charge here is conspiracy to defraud the United States by fraudulently effectuating a compliance with section 9(h), by fraudulently obtaining for the Union the use of the facilities of the Board, and by perverting and defeating the administration of the 1947 Act by the Board. The use of allegedly false non-Communist affidavits was only an incident of the conspiracy.

■ In a conspiracy charge the conspiracy is the gist of the offense (Braverman v. United States, 1942, 317 U.S. 49, 54, 63 S.Ct. 99, 87 L.Ed. 23). This prosecution is not laid under section 1001. The question of whether fraud is an essential element of an offense under section 1001 is immaterial. Instead we have the question of whether the indictment sufficiently charges, under section 371, conspiracy "to defraud the United States, or any agency thereof in any manner or for any purpose."

The statute is broad enough to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of the federal government (Haas v. Henkel, 1910, 216 U.S. 462, 479, 30 S.Ct. 249, 54 L.Ed. 569). The phrase "conspire * * to defraud the United States" includes within its meaning interference with or obstruction of one of the functions of the federal government by deceit, craft, trickery, or dishonesty (Hammerschmidt v. United States, 1924, 265 U.S. 182, 188, 44 S.Ct. 511, 68 L.Ed. 968).

Defendants rely heavily on Bridges v. United States, supra. As I read that decision, it does not support their arguments. The Bridges case specifically recognizes Haas v. Henkel and Hammerschmidt v. United States, (see 346 U.S. 221, 73 S.Ct. 1062, 97 L.Ed. 1557, note 19) and points out that those cases refer to conspiracies to defraud in violation of the second clause of the general conspiracy statute (section 371) and do not control the interpretation of the Wartime Suspension of Limitations Act. In the Bridges case the Court refers to United States v. Cohn, 1926, 270 U.S. 339, which at page 346, 46 S.Ct. 251, at page 253, 70 L.Ed. 616, distinguishes a conspiracy to defraud under the general conspiracy statute from an offense under the False Claims Act.

Under the Leedom and Amalgamated Meat Cutters cases, supra, the Court held that the Board could not decertify a union because false non-Communist affidavits were filed. Defendants argue from this that as the Board must proceed even in the event of false affidavits, there is no fraud on the Government. In other words, the successful operation of the fraud would deprive the transaction of its fraudulent character. This argument is refuted by its mere statement (United States v. Keitel, 1908, 211 U.S. 370, 394, 29 S.Ct. 123, 53 L.Ed. 230).

In the Leedom case it was said (352 U.S. 148, 77 S.Ct. 156):

"The filing of the required affidavits by the necessary officers is the key that makes available to the union the benefits of the Act."

While it may be that so far as the Board is concerned a false key is just as adequate as a true key, the persons who use that false key to unlock the door and obtain for the union benefits to which the union would not otherwise be entitled thereby defeat the purposes which the United States Supreme Court has said that Congress intended to effectuate by section 9(h). The indictment herein adequately charges a conspiracy to defraud the United States by the impairment, obstruction, and defeat of a lawful function of the Board. In my opinion, it sufficiently states an offense against the United States.

In the opinion of the Court the other grounds for dismissal of the indictment set forth in defendants' motion are without merit. Wherefore, it is

Ordered and adjudged that the motion of the defendants to dismiss the indictment be, and the same hereby is denied. It is

Further Ordered that the supplemental motion to dismiss, filed by defendants on February 4, 1958, is also denied and overruled.