**UNITED STATES**
v.
**WITHERSPOON.**
No. 11880.

United States Court of Appeals
Sixth Circuit.
March 22, 1954.

Melvin Richter, Washington, D. C.
(Warren E. Burger, Paul E. Sweeney,
Marvin C. Taylor, Herman Marcuse,
Washington, D. C., John H. Reddy,

Chattanooga, Tenn., Ferdinand Powell, Jr., Knoxville, Tenn., on the brief), for appellant.

Clyde W. Key, Knoxville, Tenn., for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

The government brought suit against appellee under the provisions of the Surplus Property Act[1] to recover damages for the fraudulent conduct of appellee in procuring surplus property from the War Assets Administration by the use of "Certificates of Veteran's Preference" unlawfully acquired from war veterans who were entitled to such certificates. Appellee moved to dismiss the government's complaint on the ground that the action was barred by the statute of limitations. The District Court sustained appellee's motion to dismiss on this ground, and, on appeal, the sole question before the court for adjudication is whether the government's suit was barred by the statute of limitations.

It appears that appellee secured a veteran's preference certificate from each of eight war veterans, and thereby procured delivery of eight automotive vehicles for his own use by the payment of sums of money at prices at which the government sold such property to veterans, which was much less than would have been the cost to the general public. The statute[2] on which the government's action is based, in so far as here pertinent, provides:

"Every person who shall use * * * any fraudulent trick, scheme, or device, for the purpose of securing or obtaining, or aiding to secure or obtain, for any person any payment, property, or other benefits from the United States or any Federal agency in connection with the procurement, transfer, or disposition of property * * *

"shall pay to the United States the sum of $2,000 for each such act, and double the amount of any damage which the United States may have sustained by reason thereof, together with the cost of suit; * * *.

"The civil remedies provided in this section shall be in addition to all other criminal penalties and civil remedies provided by law."

For each of the eight purchases made by appellee in violation of the statute, the government sought damages in the amount of $2,000, or a total of $16,000.

Title 28 U.S.C. § 2462, provides:

"Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon."

Appellee contends that the instant case is governed by the above mentioned statute of limitations for the enforcement of penalties, since the action brought against him by the government is an action for penalties. The government, on the contrary, submits that this statute does not apply inasmuch as its suit is merely to secure compensation in damages for appellee's unlawful conduct; and that, since no federal statute bars such an action, the District Court erred in its order of dismissal.

▋ We are of the opinion that the action is one for penalties. A statute is penal where the purpose is to punish an offense against the public justice, as distinguished from an action

---

1. Section 26(b) (1) of the Surplus Property Act, 50 U.S.C.A.Appendix, § 1635 (b), repealed and re-enacted as Section 209(b) of the Federal Property and Ad-ministrative Services Act of 1949, 40 U.S.C.A. § 489(b).

2. Title 40 U.S.C.A. § 489.

affording a private remedy for injury by a wrongful act; the word, "penalty," strictly and primarily denotes punishment, imposed and enforced by the state, for an offense against its laws. It also commonly is used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered. Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123. The statute upon which the government bases its action, Title 40 U.S. C.A. § 489, provides that any person who shall use a fraudulent trick or scheme to obtain property or benefits from the United States in connection with the disposition of property, shall pay to the United States "the sum of $2,000 for each such act, and double the amount of any damage which the United States may have sustained by reason thereof, together with the cost of suit". The government's complaint, after reciting the claimed fraud, sets forth that appellee became liable to the government "in the sum of $2,000 for each act committed in violation of said statute, together with double the amount of any damage" which the government sustained thereby. The statute itself distinguishes between the sum of $2,000, required to be paid for each fraudulent act in violation of the statute, and the damages, which are also recoverable. One of the alleged illegal acts involved the purchase of an automobile for $395 on one certificate. For this act, the government, under the statute, demanded payment of $2,000 and double the amount of damages it suffered. Another of the alleged illegal acts involved the purchase of a truck for more than $1,900. For this act, the government, under the statute, likewise demanded payment of $2,000 and double the amount of damages it suffered.

■ "By damages is understood the indemnity, or composition in money, which the law gives to the injured party for the breach of a contract or a duty. In theory, such damages are precisely commensurate with the injury received, except in the case of exemplary damages or smart money, where some element of fraud, malice, gross negligence, or oppression enters into the controversy. A penalty, on the other hand, is the punishment, generally pecuniary, inflicted by a law for its violation. It has no reference to the actual loss sustained by him who sues for its recovery." 23 Am.Jur. 625. In American Fidelity & Casualty Co. v. G. A. Nichols Co., 10 Cir., 173 F.2d 830, 833, it is stated: "The term 'penalty' is commonly used in the sense of an extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged as distinguished from compensation for the loss suffered by the injured person." The exaction of the arbitrary sum of $2,000 for each offense of obtaining, by fraud, surplus property, without regard to its value, is a provision for a penalty. Its purpose is, obviously, to punish an offense against the public justice, in addition to double the amount of all damages suffered by the government. But see contra, United States v. Weaver, 5 Cir., 207 F.2d 796, reversing the decision of the District Court in 107 F.Supp. 963.

The District Court held that the complaint disclosed that the government's action was for a penalty, rather than for compensation for damages suffered as a result of appellee's alleged fraud, and with this conclusion, we concur.

The complaint was filed October 17, 1952. One of the alleged acts of fraud occurred November 26, 1946; the others, during February and March of 1947. The complaint, therefore, was filed more than five years after the last alleged act of fraud, and, if the above section of the statute is applicable and controlling, the government's action was commenced too late.

However, there is a statute which, in certain cases, tolls the running of the statute of limitations. Title 18 U.S.C. § 3287, in part, provides:

"When the United States is at war the running of any statute of limitations applicable to any offense

(1) involving fraud or attempted fraud against the United States * * * shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress."

Termination of hostilities in the late war was officially declared by Presidential Proclamation No. 2714, effective December 31, 1946, 50 U.S.C.A.Appendix, § 601 note.

■ In United States v. Smith, 342 U.S. 225, 72 S.Ct. 260, 96 L.Ed. 252, the Supreme Court held that the above mentioned Title 18 U.S.C. § 3287, applied to offenses, within its scope, committed before the termination of hostilities, December 31, 1946, but did not apply to offenses committed after that date. See also United States v. Grainger, 346 U.S. 235, 237, footnote 1, 73 S.Ct. 1069, 97 L.Ed. 1575. In the instant case, one offense was committed before December 31, 1946, and, therefore, the above mentioned statute applied to it, suspending the running of the statute of limitations until three years after that date. Since the seven other offenses were committed after December 31, 1946, the tolling statute did not apply to them, and the statute of limitations ran from the time the acts were committed, for a period of five years thereafter, as provided by Title 28 U.S.C. § 2462, above mentioned. This period of limitations having expired before the commencement of the government's suit, action is barred as to these seven offenses.

The District Court held that the statute commonly known as the Suspension Act, 18 U.S.C. § 3287, supra, tolled the running of the applicable statute of limitations until the end of the hostilities, at which time the statute would again begin to run, and not become a bar until it had run its full course. Such holding, contrary to the contention advanced by the government, would not permit the addition of three years, after the termination of hostilities, to the regular limitation period; and in arrivng at his

determination in this regard, Judge Taylor followed the persuasive opinion of Judge Learned Hand in United States v. Klinger, 2 Cir., 199 F.2d 645, in which, however, it was admitted that the question was not free from doubt. The District Court, therefore, held that the statute of limitations had run against the offense committed before the date of the termination of hostilities, as well as against those committed after such date, since there had been an elapse of five years after the termination of hostilities before the filing of the government's complaint.

The government, on appeal, insists that, as to offenses committed before the termination of hostilities, the running of the statute of limitations was "suspended until three years after the termination of hostilities", 18 U.S.C. § 3287; and that, contrary to the views expressed by Judge Hand in United States v. Klinger, supra, the statute should be interpreted, according to its literal meaning, to the effect that, as to offenses committed before the termination of hostilities, the period of limitations did not commence to run until three years after the date of such termination. The government contends, therefore, that the complaint was filed within the period of eight years of the termination of hostilities—that is, the period of the limitation of five years provided by Title 28 U.S.C. § 2462, commencing three years after the termination of hostilities; and that the offense committed during the war was, therefore, not barred by the statute of limitations.

■ In United States v. Grainger, 346 U.S. 235, 73 S.Ct. 1069, 1076, 97 L.Ed. 1575, the Supreme Court, subsequent to the decision of the District Court in the instant case, had occasion to pass upon this issue and sustained the contention, advanced by the government herein, holding that the running of the statute of limitations, in such a case, was suspended until three years had expired after the termination of hostilities. Three of the justices, "adopt-

ing the reasoning of Judge Learned Hand in United States v. Klinger," dissented from the opinion of the court. On the same day on which the opinion in United States v. Grainger was handed down, the case of United States v. Klinger, supra, was affirmed by an evenly divided court. However, it was pointed out in the opinion in the Grainger case that there was presented, in the Klinger case, not only the same issue regarding the interpretation of the statute of limitations as was passed upon in the Grainger case, "but also an issue as to whether the offense charged was one involving fraud of a pecuniary nature upon the United States." There appears, therefore, no conflict between the Grainger and Klinger cases as to the interpretation of the statute and the fact that the running of the period of limitations under 18 U.S.C. § 3287, commenced three years after the termination of hostilities. The action of the government in the instant case was, therefore, not barred by the statute as to the offense alleged to have been committed November 26, 1946.

But it is contended by the appellee that, in any event, the Suspension Act, Title 18 U.S.C. § 3287, did not suspend the running of the statute of limitations with respect to the offense, in this case, committed prior to the termination of hostilities, and that, therefore, the alleged offense of November 26, 1946, as well as all alleged offenses that occurred after the termination of hostilities, was barred by Title 28 U.S.C. § 2462. This claim is based upon the theory that none of the offenses charged involved "the defrauding of the United States in any pecuniary manner or in a manner concerning property", and that, on the authority of Bridges v. United States, 346 U.S. 209, 73 S.Ct. 1055, 1062, 97 L.Ed. 1557, the Suspension Act did not apply to such offenses. The argument is advanced that since the government would have sold the surplus property in question to veterans at the same price at which it sold the property to appellee, it suffered no financial loss; that, under the Surplus Property Act, such property was to be sold to veterans, and there was never sufficient property in the possession of the government to satisfy the requirements of all veterans who desired to purchase it; and that none of such property would have remained for sale to the public for higher prices. This contention we find to be without merit. The surplus property was owned by the government. If the government's complaint is sustained by proof, it was induced to sell the surplus property to appellee, believing that he was entitled to special favor as a veteran, at a price obviously less than it would bring on the open market. This would constitute the obtaining of "property, or other benefits from the United States * * * in connection with the procurement, transfer, or disposition of property", in the language of the statute, Title 40 U.S.C. § 489, and would "involve the defrauding of the United States in [a] pecuniary manner or in a manner concerning property", in the language of the Bridges case, supra. Appellee's contention in this regard cannot reasonably be sustained.

In accordance with the foregoing, the case is remanded to the District Court for trial of the single offense above mentioned.