WYNN, Circuit Judge,
concurring:
I fully concur in the fine majority opinion. I write separately to address what appears to be the heart of the dissent’s objections: that applying the Wartime Suspension of Limitations Act, 18 U.S.C. § 3287, to the False Claims Act, 31 U.S.C. §§ 3729-33, actions in which the United States is not plaintiff or intervenor is unwise because doing so is contrary to the policy of strictly construing statutes of limitations and the goals of the False Claims Act. In particular, the dissent expresses concern that our decision will allow the False Claims Act limitations period to “extend indefinitely” and, consequently, will incentivize private plaintiffs to delay filing their claims to maximize their potential recovery. Post at 194 n. 6, 193-94. Because it is not our place to second-guess Congress’s clearly expressed policy decisions, I respectfully disagree with the dissent.
When interpreting a federal statute, the “cardinal rule ... is that the intent of [Congress] is to be given effect.” NLRB v. Wheeling Elec. Co., 444 F.2d 783, 787 (4th Cir.1971). Typically, we ascertain Congressional intent from the plain language of the statute. Id. If the plain language of the statute unambiguously expresses Congress’s intent, our inquiry comes to an end, even if we disagree with the policy embraced by the statutory language. In re Sunterra Corp., 361 F.3d 257, 269 (4th Cir.2004). For, as the Supreme Court has explained,
Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected is to be put aside in the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end. We do not sit as a committee of review, nor are we vested with the power of veto.
Tenn. Valley Authority v. Hill, 437 U.S. 153, 194-95, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).
Here, as the majority correctly concludes and the dissent tacitly acknowledges, the plain language of the Wartime Suspension of Limitations Act extends the limitation period for “any offense” of fraud against the United States during a time of war. 18 U.S.C. § 3287. No doubt recognizing that it is not our role to question Congress’s clearly expressed policy determinations, the dissent relies on strained readings of the Wartime Suspension of Limitations Act and our precedent in an attempt to argue that, under the plain language of the Wartime Suspension of Limitations Act, the term “any offense” does not encompass False Claims Act actions in which the government is not a party.
First, the dissent appeals to our decision in United States ex rel. Sanders v. North *185 American Bus Industries, Inc., in which we held that the False Claims Act limitations period tolling provision, 31 U.S.C. § 3731(b)(2), does not apply to False Claims Act actions in which the government is not a party. 546 F.3d 288, 293. Section 3731(b)(2) provides that the standard six-year False Claims Act limitations may be tolled until “no more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances.” In Sanders, we reasoned that Section 3731(b)(2) does not toll the limitations period for private False Claims Act actions because it would make little sense to have a suit’s limitations period turn on the knowledge of an entity that is not party to the action. 546 F.3d at 293.
The majority opinion correctly notes that Sanders is inapposite because it involved an entirely different statute, which includes express language that supports distinguishing between False Claims Act actions where the government is and is not a party. Ante, at 180-81. Nevertheless, the dissent tries to analogize the Wartime Suspension of Limitations Act to Section 3731(b)(2), which was at issue in Sanders, by asserting that federal government conduct controls the limitations periods set out in both statutes. In particular, the dissent notes that
[b]y the terms of the [Wartime Suspension of Limitations Act], the government is solely entitled to invoke and terminate the tolling provisions of the statute.... The private qui tam plaintiff has no connection with these decisions and it seems odd to conclude that such a private plaintiff should be entitled to the same limitations period as the necessary actor, the government. There is no such clear statutory direction.
Post at 191. But Congress does not “invoke” the Wartime Suspension of Limitations Act. Rather, the Wartime Suspension of Limitations Act becomes effective when Congress declares war or authorizes the use of military force. The invocation of the Wartime Suspension of Limitations Act is at most a tertiary consideration in Congress’s decision to declare war or authorize the use of military force, and thus there is only a de minimus relationship between the government conduct discussed in the Wartime Suspension of Limitations Act and any particular False Claims Act claim. By contrast, with Section 3132(b)(2) the connection between the relevant government conduct and a particular False Claims Act claim is quite close, because whether Section 3132(b)(2) tolls the limitations period turns on the government’s knowledge of the alleged fraudulent conduct at issue in the particular False Claims Act claim.
The dissent also places great weight on the fact that both the Wartime Suspension of Limitations Act and its legislative history are silent regarding qui tam relators in False Claims Act actions, arguing that this silence “strongly suggests that Congress did not intend the tolling provisions of the statute to reach indiscriminately to any private plaintiff pursuing a claim for fraud against the government.” Post at 193, 194. Yet the Supreme Court has admonished courts to tread carefully in attempting to find meaning in statutory silence because such silence is frequently amenable to multiple interpretations:
Not every silence is pregnant. In some cases, Congress intends silence to rule out a particular statutory application, while in others Congress’ silence signifies merely an expectation that nothing more need be said in order to effectuate the relevant legislative objective. An inference from congressional silence cer *186 tainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent.
Burns v. United States, 501 U.S. 129, 136, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991) (quotation omitted), abrogated on other grounds by United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Here, finding meaning in the Wartime Suspension of Limitations Act’s silence is improper because the silence just as reasonably can be interpreted as indicating that Congress did not intend to distinguish between False Claims Act actions by private plaintiffs and those in which the government is a party as it can be interpreted as excluding actions by private relators from the ambit of the Wartime Suspension of Limitations Act, as the dissent does.
Moreover, Congress’s decision not to clarify the scope of “any offense” when amending the Wartime Suspension of Limitations Act in 2008 in the face of numerous decisions broadly interpreting “offense” in the Wartime Suspension of Limitations Act casts further doubt on the dissent’s appeal to statutory silence. A canon of statutory construction is that “[w]e presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation.” Porter v. Bd. of Trustees of Manhattan Beach Unified School Dist., 307 F.3d 1064, 1074 (9th Cir.2002); see also United States v. Langley, 62 F.3d 602, 605 (4th Cir.1995) (“It is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law; that is with the knowledge of the interpretation that courts have given to an existing statute.”).
Congress amended the Wartime Suspension of Limitations Act in 2008 to broaden its scope by lengthening the tolling period and clarifying that the statute applies to Congressional authorizations of the use of military force as well as declared wars. See Wartime Enforcement of Fraud Act, Pub.L. No. 110-417 § 855, codified at 18 U.S.C. § 3287. Notably, the amendment did not in any way alter, narrow, or circumscribe the scope of the term “any offense.” By the time of the 2008 amendment, numerous courts had held that the term “offense” in the earlier version of the Wartime Suspension of Limitations Act encompassed civil fraud claims, including False Claims Act cases, see, e.g., United States v. Witherspoon, 211 F.2d 858 (6th Cir.1954); United States v. BNP Paribas, 884 F.Supp.2d 589, 602-05 (S.D.Tex.2012), and the only court to address whether the Wartime Suspension of Limitations Act applies to non-intervened False Claims Act actions had determined that it did, albeit in dicta, United States ex rel. McCans v. Armour & Co., 254 F.2d 90, 90 (D.C.Cir.1958). We must presume that Congress was aware of these interpretations when it amended the Wartime Suspension of Limitations Act in 2008, and its decision not to amend the statute to exclude, or even discuss, False Claims Act actions, let alone non-intervened False Claims Act actions, in the face of this precedent suggests that it agreed with, or at least acquiesced in, these judicial decisions. In such circumstances, Congress’s silence favors the majority’s reading, rather than undermining it.
Thus, neither of the dissent’s rationales for reading ambiguity into the plain language of the statute is persuasive. Therefore, we are left to conclude that when Congress said “any offense,” it meant any offense, including offenses raised by private False Claims Act relators. Because the plain language of the Wartime Suspension of Limitations Act indicates that Congress intended the statute to apply to non-intervened False Claims Act actions, it is *187 not our place to question the wisdom of this policy decision. Hill, 437 U.S. at 194-95, 98 S.Ct. 2279.
Even if the plain language of the Wartime Suspension of Limitations Act would allow us to consider the policy concerns highlighted by the dissent — that our decision will “extend indefinitely” the limitations period for False Claims Act claims and will encourage would — be relators to delay filing their claims — I am not convinced that either concern is justified. First, the Wartime Suspension of Limitations Act tolls the limitations period for fraud actions for a bounded period of time: the time during which the country is at war or otherwise engaged in a military conflict. 18 U.S.C. § 3287. Moreover, even if the informal nature of modern military conflicts renders the limitations period established by the Wartime Suspension of Limitations Act somewhat less definite, it is within Congress’s purview to determine that certain conduct is sufficiently egregious — such as defrauding the government during a time of war — that an extended or indefinite limitations period is warranted. Indeed, Congress has elected to entirely do away with limitations periods for many federal crimes. See Charles Doyle, Cong. Research Serv., RL 31253, Statutes of Limitation in Federal Criminal Cases: An Overview 18-24 (2012).
Second, any concern that our holding will encourage relators to sit on their claims in order to maximize recovery is alleviated by the False Claims Act’s public disclosure and first-to-file bars, which preclude a would-be relator from bringing a claim that is based on information that has already been publicly disclosed or that is “related” to a pending action. See 31 U.S.C. §§ 3720(e)(4), 3730(b)(5). Regardless of the applicability of the Wartime Suspension of Limitations Act, False Claims Act relators have an incentive to bring actions as early as possible to avoid having their claims dismissed under either of these two provisions.
In sum, the majority correctly concludes that the plain language of the Wartime Suspension of Limitations Act unambiguously encompasses False Claims Act actions in which the government is not a party. It is not this Court’s — or any court’s — place to revisit Congress’s clearly articulated policy determinations, even when we feel they are unwise. If, after reviewing our decision, Congress agrees with the dissent that limiting the Wartime Suspension of Limitations Act to False Claims Act actions in which the government is a party is the best policy, it is free to amend the statute, as it did in 2008. Until that point, however, we are required to give effect to Congress’ intent, as expressed through the plain and unambiguous language of the Wartime Suspension of Limitations Act, that the tolling applies to “any offense.” See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 130 S.Ct. 1605, 1624, 176 L.Ed.2d 519 (2010) (“To the extent Congress is persuaded that the policy concerns identified by the dissent require a reealib-ration of [a statute], it is, of course, free to amend the statute accordingly____ This court may not, however, read more into [a statute] than the statutory language naturally supports.”).