**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Radatz v. Fed. Natl. Mtge. Assn.,* **Slip Opinion No. 2016-Ohio-1137.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-1137

RADATZ, APPELLEE, *v.* FEDERAL NATIONAL MORTGAGE ASSOCIATION, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Radatz v. Fed. Natl. Mtge. Assn.,* Slip Opinion No. 2016-Ohio-1137.]**

*Class actions—Subject matter jurisdiction—Statutory damages—Cease-and-desist order did not preclude trial court from exercising jurisdiction under 12 U.S.C. 4635(b)—12 U.S.C. 4617(j)(4) prohibited trial court from ordering payment of statutory damages—Court of appeals' judgment affirmed and matter remanded to trial court.*

(No. 2014-1126—Submitted September 15, 2015—Decided March 23, 2016.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 100205, 2014-Ohio-2179.

_____

**FRENCH, J.**

{¶ 1} In this appeal, we address whether a cease-and-desist order issued by the Federal Housing Finance Agency ("FHFA") to defendant-appellant, Federal National Mortgage Association ("Fannie Mae"), divested the trial court of subject matter jurisdiction over the class action of plaintiff-appellee, Rebekah R. Radatz, for statutory damages against Fannie Mae under R.C. 5301.36(C). We agree with the holding of the Eighth District Court of Appeals that the cease-and-desist order did not preclude the trial court from exercising jurisdiction under 12 U.S.C. 4635(b), the federal statute governing judicial review of FHFA orders. However, we conclude that a different federal statute, 12 U.S.C. 4617(j)(4), bars the trial court from ordering Fannie Mae to pay damages under R.C. 5301.36(C) while Fannie Mae is under FHFA's conservatorship. The awarding of such damages runs afoul of 12 U.S.C. 4617(j)(4), which prohibits Fannie Mae from incurring liabilities "in the nature of penalties or fines" while under FHFA conservatorship. We therefore affirm the Eighth District's judgment reversing the decision of the trial court, albeit for different reasons than those stated by the court of appeals, and remand the matter to the trial court.

## BACKGROUND ON FANNIE MAE AND THE FEDERAL HOUSING AND ECONOMIC RECOVERY ACT OF 2008

{¶ 2} Fannie Mae is a federally chartered private corporation created by the United States Congress to "provide stability in the secondary market for residential mortgages" and to "promote access to mortgage credit" by "increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing." 12 U.S.C. 1716(1), (4). Congress created the Federal Home Loan Mortgage Corporation ("Freddie Mac") for substantially similar purposes. *See* Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, § 731(a), 103 Stat. 429. The two entities purchase residential mortgages from banks,

2

repackage them for sale as mortgage-backed securities, and guarantee these securities by promising to make investors whole if borrowers default. Congressional Budget Office, *Fannie Mae, Freddie Mac, and the Federal Role in the Secondary Mortgage Market* viii (2010), https://www.cbo.gov/publication/21992#section0 (accessed Dec. 15, 2015).

{¶ 3} In response to the nationwide decline in housing prices, increase in foreclosures, and heightened concern as to whether Fannie Mae and Freddie Mac had enough capital to cover losses to their portfolios, *id*., Congress enacted the Housing and Economic Recovery Act of 2008 ("HERA"), Pub.L. No. 110-289, § 1101, 122 Stat. 2654 (codified at 12 U.S.C. 4511). HERA created FHFA and empowered the agency to act as both regulator and conservator of Fannie Mae and Freddie Mac.

{¶ 4} As regulator, FHFA must ensure that each entity "operates in a safe and sound manner," "foster[s] liquid, efficient, competitive, and resilient national housing finance markets," operates "consistent[ly] with the public interest," and complies with all applicable law. 12 U.S.C. 4513(a)(1)(B). FHFA's regulatory powers include the authority to issue cease-and-desist orders if a regulated entity is engaging in "unsafe or unsound practices." 12 U.S.C. 4631(a). If FHFA has reasonable cause to believe that a regulated entity is about to engage in unsafe or unsound practices or is violating, has violated or is about to violate a law, rule, regulation or order, the agency issues a notice of charges. 12 U.S.C. 4631(a)(1), (c)(1). After a hearing or upon consent of the regulated entity, 12 U.S.C. 4631(c)(2), FHFA issues a cease-and-desist order, which becomes final and effective 30 days after service or upon consent, 12 U.S.C. 4631(f).

{¶ 5} Congress also authorized FHFA to place the two entities under its conservatorship "for the purpose of reorganizing, rehabilitating, or winding up the affairs of a regulated entity." 12 U.S.C. 4617(a)(2). Upon appointment as conservator, FHFA succeeds to "all rights, titles, powers, and privileges of the

regulated entity," 12 U.S.C. 4617(b)(2)(A)(i), and may take action "necessary to put the regulated entity in a sound and solvent condition" and "appropriate to * * * preserve and conserve the assets and property of the regulated entity." 12 U.S.C. 4617(b)(2)(D).

## FACTS AND PROCEDURAL HISTORY

### *Summary of R.C. 5301.36 class-action allegations*

{¶ 6} On August 7, 2003—before Congress enacted HERA—Radatz filed a class-action complaint in Cuyahoga County. Radatz alleges on behalf of similarly situated class members that Fannie Mae failed to timely record in the appropriate county recorder's office the satisfaction of her residential mortgage within 90 days after payoff, as state law (R.C. 5301.36(B)) requires. Radatz and the class members each seek to recover $250 under R.C. 5301.36(C). Division (C) of R.C. 5301.36 states that if a mortgagee fails to record the satisfaction of a mortgage in compliance with R.C. 5301.36(B), "the mortgagor of the unrecorded satisfaction and the current owner of the real property to which the mortgage pertains may recover, in a civil action, damages of two hundred fifty dollars." R.C. 5301.36(C). This remedy "does not preclude or affect any other legal remedies or damages that may be available to the mortgagor." *Id.*

{¶ 7} In December 2006, the trial court certified the following class: "[a]ll persons who, since May 9, 1997 and thereafter, paid off an Ohio residential mortgage (as defined by R.C. 5301.36), where [Fannie Mae] was the mortgagee at the time of the payoff, and a satisfaction was not recorded with any Ohio county recorder within 90 days from the date of payoff." The Eighth District Court of Appeals affirmed certification of the class. *Radatz v. Fed. Natl. Mtge. Assn.*, 176 Ohio App.3d 319, 2008-Ohio-1937, 891 N.E.2d 1236 (8th Dist.). This court declined to hear Fannie Mae's appeal of the class-certification order. *Radatz v. Fed. Natl. Mtge. Assn.*, 119 Ohio St.3d 1486, 2008-Ohio-5273, 894 N.E.2d 1244.

**{¶ 8}** On September 6, 2008, during class-certification proceedings, FHFA placed Fannie Mae and Freddie Mac under its conservatorship. Fannie Mae thereafter sought to remove the class action to federal court, invoking the conservatorship as a basis for its petition. The district court denied Fannie Mae's removal petition and remanded the matter to the Cuyahoga County Common Pleas Court in March 2010.

### *FHFA's consent order and Fannie Mae's motion to dismiss*

**{¶ 9}** Upon remand and during proceedings before the trial court as to the scope of class membership, FHFA issued the following consent order dated March 9, 2013:

> Pursuant to 12 U.S.C. § 4631, [Fannie Mae] and [Freddie Mac] (together "the Enterprises") are hereby
>
> 1. ORDERED to CEASE and DESIST from violating 12 U.S.C. § 4617(j)(4) by paying, for any reason, directly or indirectly, any fines or penalties imposed by any state mortgage satisfaction law on the Enterprises for noncompliance.
>
> Furthermore, Fannie Mae is
>
> 2. ORDERED to CEASE AND DESIST from violating 12 U.S.C. § 4617(j)(4) by paying, for any reason, directly or indirectly, any amount pursuant to Ohio Code 5301.36 or pursuant to any judgment in connection with the pending lawsuit styled *Radatz v. Fed. Nat'l Mortgage Ass'n*, Case No. CV-03-507616 (Ohio Com. Pleas).

**{¶ 10}** On March 13, 2013, Fannie Mae moved to dismiss for lack of subject matter jurisdiction. Fannie Mae argued that maintaining the class action would "affect" FHFA's enforcement of the consent order in contravention of 12

U.S.C. 4635(b), which states that "no court shall have jurisdiction to affect, by injunction or otherwise, the issuance or enforcement of any notice or order under section 4631 [cease-and-desist orders] * * * or to review, modify, suspend, terminate, or set aside any such notice or order." Fannie Mae also argued that the consent order expressly prohibits Fannie Mae from paying any judgment in this matter under R.C. 5301.36(C) because 12 U.S.C. 4617(j)(4) shields Fannie Mae from any liability "in the nature of penalties or fines" while under FHFA's conservatorship. The trial court agreed with Fannie Mae and dismissed the complaint for lack of subject matter jurisdiction.

**{¶ 11}** The Eighth District Court of Appeals reversed and held that the FHFA consent order did not divest the trial court of jurisdiction. Relying in part on *Rosette v. Countrywide Home Loans, Inc.*, 105 Ohio St.3d 296, 2005-Ohio-1736, 825 N.E.2d 599, the Eighth District held that R.C. 5301.36(C) awards compensatory and not punitive damages. 2014-Ohio-2179, 11 N.E.3d 1230, ¶ 14. The court therefore concluded that R.C. 5301.36(C) does not implicate 12 U.S.C. 4617(j)(4), which immunizes Fannie Mae from incurring liabilities in the nature of a penalty or fine. *Id.* at ¶ 19. And based on its determination that R.C. 5301.36(C) does not award damages in the nature of a penalty or fine, the appeals court concluded that a judgment awarding statutory damages under R.C. 5301.36(C) would not "affect" the FHFA consent order in contravention of 12 U.S.C. 4635(b). *Id.* at ¶ 20.

**{¶ 12}** We accepted Fannie Mae's appeal on the following two propositions of law: (1) "Under the controlling statutory framework established by Congress, 12 U.S.C. 4635(b), no Ohio court has jurisdiction to review a cease-and-desist order issued by [FHFA] as Regulator" and (2) "[FHFA]'s Order determining that R.C. 5301.36 is 'in the nature of a penalty' under federal law is not inconsistent with [*Rosette*, 105 Ohio St.3d 296, 2005-Ohio-1736, 825 N.E.2d 599]."

## ANALYSIS

### *Subject matter jurisdiction under 12 U.S.C. 4635(b)*

{¶ 13} We begin our analysis with 12 U.S.C. 4635(b), the federal statute that governs judicial review of FHFA cease-and-desist orders issued under 12 U.S.C. 4631. Subsection 4635(b) states:

> Except as otherwise provided in this subchapter and sections 4619[1] and 4623[2] of this title, no court shall have jurisdiction to affect, by injunction or otherwise, the issuance or enforcement of any notice or order under section 4631 * * * or to review, modify, suspend, terminate, or set aside any such notice or order.

{¶ 14} Subsection 4635(b) mirrors nearly identical language in 12 U.S.C. 1818(i)(1), which governs judicial review of cease-and-desist orders issued against financial institutions by other federal agencies, including the Office of Comptroller of the Currency ("OCC"). Given the dearth of case law addressing 12 U.S.C. 4635(b), we look to decisions examining 12 U.S.C. 1818(i)(1). The United States Supreme Court has concluded that subsection 1818(i)(1) provides "clear and convincing evidence that Congress intended to deny" the district courts jurisdiction to review and enjoin an agency's ongoing administrative proceedings. *Fed. Reserve Sys. Bd. of Governors v. MCorp Fin., Inc.,* 502 U.S. 32, 44, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). *See also Am. Fair Credit Assn. v. United Credit Natl. Bank*, 132 F.Supp.2d 1304, 1311 (D.Colo.2001) (hereinafter "*AFCA*") (citing *MCorp Fin.* and collecting cases "agree[ing] that Congress'

---

[1] 12 U.S.C. 4619 has been repealed. Pub.L. No. 110-289, Div. A, Title I, § 1145(b)(4), 122 Stat. 2767 (2008).

[2] 12 U.S.C. 4623 allows an entity to appeal a capital classification by FHFA under 12 U.S.C. 4614 and is not applicable to cease-and-desist orders under section 4631.

withdrawal of jurisdiction over consent orders in Section 1818(i)(1) is far-reaching").

{¶ 15} Notwithstanding this broad language, subsections 1818(i)(1) and 4635(b) do not automatically bar courts from adjudicating claims involving a regulated entity subject to a cease-and-desist order. The jurisdictional bar in subsection 4635(b) "is not meant to displace a non-party's right to present its claims to a * * * court, or the jurisdiction of the court to hear those claims." *In re JPMorgan Chase Mtge. Modification Litigation,* 880 F.Supp.2d 220, 232 (D.Mass.2012) (construing subsection 1818(i)(1)). *See also Newton v. Am. Debt Servs., Inc.*, 75 F.Supp.3d 1048, 1059 (N.D.Cal.2014) (subsection 1818(i)(1) "does not prevent a court from adjudicating the legality of conduct under substantive laws and regulations simply because [an agency] has taken similar or parallel actions"). As illustrated by various cases, a court may adjudicate state-law claims against a regulated entity subject to a federal consent order so long as the exercise of such jurisdiction does not conflict with or contradict the terms of the consent order itself.

{¶ 16} *AFCA* provides an apt example of how the jurisdictional bar may preclude some but not all claims against a regulated entity. In *AFCA,* the court found that 12 U.S.C. 1818(i)(1) divested the court of jurisdiction over AFCA's claims against a national bank, which would have required payment of money damages "in direct contravention" of a cease-and-desist order issued by the OCC. *AFCA* at 1312. The cease-and-desist order prohibited the bank from " 'all activity and transactions relating to the products of [AFCA], including but not limited to payment of funds *for any reason* to AFCA.' " (Brackets and emphasis sic.) *Id*. The court retained jurisdiction, however, over AFCA's remaining claims against the bank's parent company. *Id*. at 1311-1312. The OCC cease-and-desist order did not prohibit the parent company from making payments; it merely ordered the

8

parent company to assume, pay off, and resolve all of the bank's remaining liabilities. *Id.*

**{¶ 17}** Subsection 1818(i)(1) also did not preclude the courts in *Rex v. Chase Home Fin., L.L.C.*, 905 F.Supp.2d 1111 (C.D.Cal.2012), and *In re JPMorgan Chase Mtge. Modification Litigation* from adjudicating the plaintiffs' claims against JPMorgan for breach of contract and violations of state consumer-protection law. Both cases involved an OCC consent order requiring JPMorgan Chase to implement a compliance program to remedy questionable mortgage servicing and foreclosure practices. Because the consent order was "silent regarding the relief Plaintiffs seek," adjudication of the plaintiffs' claim for damages would not affect enforcement of the consent order. *Rex* at 1126. *Accord In re JPMorgan Chase Mtge. Modification Litigation* at 232 (section 1818 did not preclude the court from effectuating a remedy that did not affect or contradict consent order).

**{¶ 18}** Likewise, we do not find here that the FHFA consent order against Fannie Mae divested the trial court of jurisdiction. The terms of the consent order narrowly prohibit Fannie Mae from "paying, for any reason, directly or indirectly, any amount pursuant to [R.C.] 5301.36 or pursuant to any judgment in connection with the pending [Radatz] lawsuit." The consent order does not preclude the trial court from, for example, certifying a class or determining for each alleged violation whether Fannie Mae is the "mortgagee" of record, as defined by R.C. 5301.36(H)(1). While the consent order prohibits payment by Fannie Mae, it does not prohibit a court from issuing a judgment or determining whether Fannie Mae violated state law. Unlike the cases cited by Fannie Mae, adjudication of Radatz's claims here would not enjoin, modify or set aside the FHFA cease-and-desist order or contravene the express terms of that order. *See MCorp Fin.*, 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (court lacked jurisdiction over adversarial bankruptcy proceedings filed by regulated entity seeking to enjoin

agency's cease-and-desist order); *Ridder v. Office of Thrift Supervision*, 146 F.3d 1035 (D.C.Cir.1998) (court lacked jurisdiction to hear challenge filed by former officers of regulated entity seeking payment of attorney fees prohibited by consent order).

{¶ 19} We therefore conclude that the FHFA consent order and 12 U.S.C. 4635(b) do not bar the trial court from adjudicating Radatz's class-action claims under R.C. 5301.36.

### The applicability of 12 U.S.C. 4617(j)(4) to damages paid under R.C. 5301.36(C)

{¶ 20} Notwithstanding our conclusion that 12 U.S.C. 4635(b) did not divest the trial court of subject matter jurisdiction, a different provision in HERA—12 U.S.C. 4617(j)(4)—bars Radatz's recovery of money damages under R.C. 5301.36(C).

{¶ 21} Subsection 4617(j)(4) states that while FHFA is acting as conservator, "[t]he Agency shall not be liable for any amounts *in the nature of penalties or fines*, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." (Emphasis added.) 12 U.S.C. 4617(j)(4). At the outset, we reject Radatz's contention that 12 U.S.C. 4617(j)(4) applies only to "the Agency" and therefore does not apply to Fannie Mae. Because FHFA succeeds to all the rights, titles, powers, and privileges of a regulated entity during conservatorship, *see* 12 U.S.C. 4617(b)(2)(A), courts have uniformly construed subsection 4617(j)(4) to preclude the imposition of fees or penalties against Fannie Mae while under FHFA's conservatorship. *Fed. Hous. Fin. Agency v. Chicago*, 962 F.Supp.2d 1044, 1064 (N.D.Ill.2013); Higgins *v. BAC Home Loans Servicing, L.P.*, E.D.Ky. No. 12-cv-183-KKC, 2014 WL 1332825, *2 (Mar. 31, 2014), *rev'd on other grounds*, 793 F.3d 688 (6th Cir.2015) ("there is essentially no distinction between the Agency and Fannie Mae" during conservatorship);

*Nevada ex rel. Hager v. Countrywide Home Loans Servicing, L.P.*, 812 F.Supp.2d 1211, 1218 (D.Nev.2011).

{¶ 22} The question whether Congress intended to waive Fannie Mae's immunity from state-law penalties implicates a "strong federal interest." *United States v. Lewis Cty.*, 175 F.3d 671, 676-677 (9th Cir.1999). We therefore turn to federal law to determine whether the $250 recovery for each violation of R.C. 5301.36 constitutes a penalty. *See also Natl. Loan Investors, L.P. v. Orange*, 204 F.3d 407, 412 (2d Cir.2000) (whether a state-law charge constitutes a penalty under a federal statute "is a federal question informed by state law"); *Irving Indep. School Dist. v. Packard Properties, Ltd.*, 741 F.Supp. 120, 123 (N.D.Tex.1990) (same).

{¶ 23} The federal test for determining whether a particular statutory provision is punitive or remedial consists of three factors: (1) whether the purpose of the statute as a whole primarily redresses individual wrongs or more general wrongs to the public, (2) whether recovery under the statute runs to the harmed individual or to the public, and (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered. *Murphy v. Household Fin. Corp.*, 560 F.2d 206, 209 (6th Cir.1977), citing *Huntington v. Attrill*, 146 U.S. 657, 666-669, 13 S.Ct. 224, 36 L.Ed. 1123 (1892), and *Bowles v. Farmers Natl. Bank of Lebanon*, 147 F.2d 425, 428 (6th Cir.1945). *See also Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 70 Ohio St.3d 281, 288, 638 N.E.2d 991 (1994) (Resnick, J., concurring), citing three-part test from *Huntington*, *Murphy,* and *Bowles*.

{¶ 24} Application of these factors requires us to conclude here that payments made under R.C. 5301.36(C) for failure to record a mortgage satisfaction would be "in the nature of penalties" and therefore may not be assessed against Fannie Mae under 12 U.S.C. 4617(j)(4) while under FHFA's conservatorship.

**{¶ 25}** When considered as a whole, R.C. 5301.36 is intended to promote efficiency and certainty in real-estate transactions and to penalize the untimely recording of satisfied mortgages rather than to compensate borrowers in full for actual losses. *See Pinchot v. Charter One Bank, F.S.B.*, 99 Ohio St.3d 390, 2003-Ohio-4122, 792 N.E.2d 1105, ¶ 58, quoting decision below; *Pinchot v. Charter One Bank, F.S.B.*, 8th Dist. Cuyahoga No. 79359, 2002 WL 568400, *7 (Apr. 11, 2002) (R.C. 5301.36 "is not simply aimed at aiding the individual borrower; it assists all others involved in all real estate transactions, and assists the State by encouraging those transactions and reducing costly disputes").

**{¶ 26}** While recovery of $250 accrues to the current owner of affected property and not to the state or a third party, recovery of that amount is not tied to any actual losses suffered by an aggrieved individual. " '[D]amages are precisely commensurate with the injury received.' " *United States v. Witherspoon*, 211 F.2d 858, 861 (6th Cir.1954), quoting 23 American Jurisprudence, Forfeitures and Penalties, Section 29, at 625 (1939). A penalty, on the other hand, " 'has no reference to the actual loss sustained by him who sued for its recovery.' " *Id.*

**{¶ 27}** In *Witherspoon*, the Sixth Circuit examined a statute that prohibited fraudulent transactions with the federal government and required violators to pay $2,000 for each offense and double the amount of any damages actually sustained by the government. The court held that the "exaction of the arbitrary sum of $2,000" for each offense of obtaining surplus property by fraud, "without regard to [the property's] value, is a provision for a penalty." *Id.*

**{¶ 28}** Likewise, R.C. 5301.36(C) exacts an arbitrary sum of $250 for each offense, without any reference to the value of mortgaged property or any losses sustained by the borrower, for the purpose of punishing the mortgagee for noncompliance. As with the statute examined in *Witherspoon*, R.C. 5301.36(C) imposes a penalty on the offender *and* allows the injured person to recover actual damages. *See* R.C. 5301.36(C) ("This division does not preclude or affect any

other legal remedies or damages that may be available to the mortgagor"). If a borrower suffers actual harm resulting from a mortgage-recording error or delay—for example, a cloud on title that disrupts or prevents the disposition of encumbered property—R.C. 5301.36(C) allows the borrower to pursue a claim for damages. Where, as here, "statutory damages are allowed in addition to compensatory (actual) damages[,] they are considered a penalty." *In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328, 341 (N.D.Ill.2002).

{¶ 29} The ability of an affected borrower to collect $250 under R.C. 5301.36(C) *and* to pursue a separate action to recover actual damages distinguishes this case from *Higgins*, 2014 WL 1332825. *Higgins* involved a Kentucky statute allowing for recovery of three times the actual damages for failure to record a mortgage assignment *or* a minimum of $500 but not both. *Id.* at *6. The *Higgins* court distinguished its case from *Witherspoon* and concluded that the $500 minimum was a liquidated-damages provision that approximated actual damages and not a penalty. *Id.* In contrast, R.C. 5301.36(C) does not attempt to tie recovery of $250 to any actual losses and expressly provides for recovery of actual damages in a separate action. Thus, *Witherspoon,* and not *Higgins*, informs our analysis here.

{¶ 30} Moreover, we can conclude here that payments under R.C. 5301.36(C) would be "in the nature of penalties" under 12 U.S.C. 4617(j)(4) without overruling or contradicting *Rosette*, 105 Ohio St.3d 296, 2005-Ohio-1736, 825 N.E.2d 599. In *Rosette*, this court concluded that R.C. 5301.36(C) is a remedial rather than penal statute and therefore applied the six-year limitations period in R.C. 2305.07 for "a liability created by statute other than a forfeiture or penalty." *Id.* at syllabus. The presence of the word "damages" in R.C. 5301.36(C) was dispositive to the court's ruling. *Id.* at ¶ 13. *Rosette* is not controlling here, however.

{¶ 31} *Rosette* addressed whether payments under R.C. 5301.36(C) should be labeled as penal or remedial for statute-of-limitations purposes. *Rosette* has no bearing on whether payments under R.C. 5301.36(C) are "in the nature of penalties" under 12 U.S.C. 4617(j)(4), which requires a completely different test under federal law. The court's reliance in *Rosette* on a single word is irreconcilable with the federal test for determining whether a particular statutory provision is punitive. The federal test requires an examination of the statute as a whole for its "essential character and effect," and not "what name the statute is called by the legislature." *Huntington*, 146 U.S. at 683, 13 S.Ct. 224, 36 L.Ed. 1123. *See also Genty v. Resolution Trust Corp.*, 937 F.2d 899, 912 (3d Cir.1991) ("generally courts look in the first instance to whether the purpose of the statue *as a whole* primarily redresses individual wrongs or more general wrongs to the public") (emphasis sic); *Rosette* at ¶ 18 (Lanzinger, J., dissenting, joined by Lundberg Stratton and O'Connor, JJ.), citing *Huntington* and criticizing majority's reliance on "a single word" rather than statutory purpose to determine whether R.C. 5301.36(C) is remedial or penal.

{¶ 32} We have also recognized that statutory sanctions may serve both compensatory and punitive purposes. *State ex rel. Emmich v. Indus. Comm.*, 148 Ohio St. 658, 668-669, 76 N.E.2d 710 (1947). *See also Austin v. United States*, 509 U.S. 602, 610, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) ("sanctions frequently serve more than one purpose"). In *Emmich*, this court held that an additional award provided to employees under the Ohio Constitution for an employer's violation of any safety requirement did not exceed the statutory limit for "ordinary compensation" because the constitutional provision served a dual purpose. *Emmich* at 666-669. We explained that it provided "compensation so far as the employee is concerned, but is in the nature of a penalty so far as such award affects the employer." *Id.* at paragraph three of the syllabus. Because statutory sanctions can serve more than one purpose, we can conclude here that

the statutory remedy in R.C. 5301.36(C) vindicates both punitive and remedial purposes without disturbing our holding in *Rosette*.

{¶ 33} For all these reasons, we conclude that the $250 statutory award under R.C. 5301.36(C) is intended to penalize noncompliance and is thus "in the nature of penalties" in violation of 12 U.S.C. 4617(j)(4). While Fannie Mae is under FHFA's conservatorship, Fannie Mae is immune from liability for payments pursuant to a judgment under R.C. 5301.36(C).

### *Radatz's due-process claim*

{¶ 34} Radatz also argues that dismissal of her claims based on FHFA's consent order without an opportunity to challenge the order deprives her of due process. We do not address Radatz's due-process challenge because the Eighth District explicitly declined to address it, 2014-Ohio-2179, 11 N.E.3d 1230, at ¶ 5, and we did not accept any proposition of law related to this issue.

### CONCLUSION

{¶ 35} We agree with the holding of the Eighth District Court of Appeals that the cease-and-desist order did not preclude the trial court from exercising jurisdiction under 12 U.S.C. 4635(b). However, we conclude that 12 U.S.C. 4617(j)(4) prohibits the trial court from ordering Fannie Mae to pay damages under R.C. 5301.36(C) while under FHFA's conservatorship. We therefore affirm, albeit on different grounds, the Eighth District's judgment reversing the trial court, and remand to the trial court for resolution of any remaining issues.

Judgment affirmed

and cause remanded.

O'DONNELL, and KENNEDY, JJ., concur.

PFEIFER, J., concurs in judgment only with an opinion in which O'NEILL, J., joins.

LANZINGER, J., dissents with an opinion in which O'CONNOR, C.J., joins.

_____

**PFEIFER, J., concurring in judgment only.**

{¶ 36} The majority opinion states that it affirms the appellate court, and Radatz sincerely wishes that it had. The appellate court, after all, concluded that requiring Fannie Mae to pay a judgment would not impose a penalty, something that Radatz agrees with, but something the majority opinion most decidedly does not agree with. Even as it technically affirms the lower court, it does so, in its own words, "for different reasons." Majority opinion at ¶ 1. Radatz's pyrrhic victory in this case is reminiscent of Nicholas Breton's line that "a hollow friend is but a hellish foe." *The Works in Verse and Prose of Nicholas Breton*, Vol. 2 (1879).

{¶ 37} I would actually and truly affirm the court of appeals. It determined that FHFA does not have the authority to "infinitely immunize Fannie Mae from paying any amounts stemming from any actions." 2014-Ohio-2179, 11 N.E.3d 1230, ¶ 10. It concluded that any immunity must derive from statute, such as the prohibition against paying any amount "in the nature of a penalty or fine." *Id.* at ¶ 11, citing 12 U.S.C. 4617(j)(4). And it concluded that the statutory damages attached to a violation of R.C. 5301.36 are not a penalty or fine and, therefore, that the consent decree does not prohibit Fannie Mae from paying them. *Id.* at ¶ 19.

{¶ 38} Because I believe that the court of appeals' judgment should be affirmed in toto, not just technically, I concur in judgment only.

O'NEILL, J., concurs in the foregoing opinion.

———————————

**LANZINGER, J., dissenting.**

{¶ 39} Because I agree with the trial court's dismissal of this case for lack of jurisdiction, I respectfully dissent.

**{¶ 40}** Rebekah R. Radatz instituted a class-action lawsuit because Fannie Mae allegedly failed to record the satisfaction of mortgages in various Ohio county recorders' offices within 90 days after payoff. Under R.C. 5301.36(C):

> If the mortgagee fails to comply with division (B) of this section, the mortgagor of the unrecorded satisfaction and the current owner of the real property to which the mortgage pertains may recover, in a civil action, damages of two hundred fifty dollars. *This division does not preclude or affect any other legal remedies or damages* that may be available to the mortgagor.

(Emphasis added.)

**{¶ 41}** The trial court dismissed the case for lack of jurisdiction pursuant to 12 U.S.C. 4635(b), which states that "no court shall have jurisdiction to affect, by injunction or otherwise, the issuance or enforcement of any notice or order under section 4631 [cease-and-desist orders] * * * or to review, modify, suspend, terminate, or set aside any such notice or order." The remedy the class action seeks is expressly covered by the Federal Housing Finance Agency's ("FHFA") consent order dated March 9, 2013:

> Pursuant to 12 U.S.C. § 4631, [Fannie Mae] and [Freddie Mac] (together "the Enterprises") are hereby
>
> 1.    ORDERED to CEASE and DESIST from violating 12 U.S.C. § 4617(j)(4) by paying, for any reason, directly or indirectly, any fines or penalties imposed by any state mortgage satisfaction law on the Enterprises for noncompliance.
>
> Furthermore, Fannie Mae is

2. ORDERED to CEASE AND DESIST from violating 12 U.S.C. § 4617(j)(4) by paying, for any reason, directly or indirectly, any amount pursuant to Ohio Code 5301.36 or pursuant to any judgment in connection with the pending lawsuit styled *Radatz v. Fed. Nat'l Mortgage Ass'n*, Case No. CV-03-507616 (Ohio Com. Pleas).

{¶ 42} The Eighth District Court of Appeals held that R.C. 5301.36(C) awards are compensatory damages. I disagree with this conclusion for reasons expressed in my dissent in *Rosette v. Countrywide Home Loans*, *Inc.*, 105 Ohio St.3d 296, 2005-Ohio-1736, 825 N.E.2d 599. The statutory payment sought by the class members is not "compensation" but in the nature of a fine or penalty "imposed by any state mortgage satisfaction law * * * for noncompliance."

{¶ 43} The majority refuses to hold that the trial court lacked jurisdiction even though it determines that the class cannot recover under R.C. 5301.36 because the award is a penalty under federal law. It is difficult to say what is left for the trial court to do upon remand, when it cannot order payment of $250 to each class member. As R.C. 5301.36(C) notes, a mortgagor may have other remedies available (presumably for compensatory damages), but adjudication of the class members' claims would modify the FHFA cease-and-desist order if the class members prevailed.

{¶ 44} I therefore would reverse the judgment of the court of appeals and reinstate the trial court's order dismissing this action.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

Dworken & Bernstein Co., L.P.A., Patrick J. Perotti, and James S. Timmerberg; and Brian Ruschel, for appellee.

Squire Patton Boggs (US), L.L.P., and Richard S. Gurbst; Porter Wright Morris & Arthur, L.L.P., J. Philip Calabrese, and Kathleen M. Trafford; and O'Melveny & Myers, L.L.P., and Jeffrey Kilduff, for appellant.

Bricker & Eckler, L.L.P., Anne Marie Sferra, and Sommer Sheely; and Stephen E. Hart, Deputy General Counsel, Federal Housing Finance Agency, urging reversal for amicus curiae Federal Housing Finance Agency.

Jeffrey M. McGaffick, urging affirmance for amicus curiae First Priority Title Agency.

_____